THEODORE J. BOUTROUS, JR., SBN 132099
   tboutrous@gibsondunn.com
DANIEL G. SWANSON, SBN 116556
   dswanson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

CYNTHIA E. RICHMAN (*pro hac vice*)
   crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

KEVIN YEH, SBN 314079
   kyeh@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

Attorneys for Defendants Uber Technologies, Inc.,
Rasier, LLC, Rasier-CA LLC, Rasier-PA, LLC, Rasier-
DC, LLC, Rasier-NY, LLC, and Uber USA, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SC INNOVATIONS, INC., <br><br>        *Plaintiff*, <br><br>   v. <br><br> UBER TECHNOLOGIES, INC., RASIER, LLC, RASIER-CA LLC, RASIER-PA, LLC, RASIER-DC, LLC, RASIER-NY, LLC, AND UBER USA, LLC, <br><br>        *Defendants*. | CASE NO. 3:18-cv-07440-JCS <br><br> **DEFENDANTS' MOTION TO DISQUALIFY QUINN EMANUEL URQUHART & SULLIVAN LLP** <br><br> Hearing Date: April 26, 2019 <br> Time:       9:30 a.m. <br> Location:   Courtroom G, 450 Golden Gate Avenue, San Francisco, CA |

Gibson, Dunn & Crutcher LLP

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 26, 2019, at 9:30 a.m., or as soon thereafter as may be heard before the Honorable Joseph C. Spero, in Courtroom G of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, defendants Uber Technologies, Inc.; Rasier, LLC; Rasier-CA, LLC; Rasier-PA, LLC; Rasier-DC, LLC; Rasier-NY, LLC; and Uber-USA, LLC (collectively, "Uber"), will and hereby do move this Court for an order disqualifying Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), from representing plaintiff SC Innovations, Inc. ("SCI"), in this action.

Uber respectfully requests that the Court disqualify Quinn Emanuel from representing SCI in this action because Quinn Emanuel has previously represented Uber on cases and counseled Uber on matters substantially related to the facts and law at issue in this action and is therefore presumptively conflicted.  Furthermore, in the process of its representation and counseling, Quinn Emanuel has received access to significant amounts of confidential information directly material to this matter, thus requiring it to be barred from representing a client adverse to Uber on a related matter.  Uber's motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, all concurrently filed declarations and exhibits, argument of counsel, and all pleadings and papers on file in this action.

## ISSUE TO BE DECIDED

Whether Uber's longtime counsel, Quinn Emanuel, is presumptively disqualified from representing SCI in this unfair competition action in light of its previous defense of Uber in 16 substantially related actions and counseling on substantially related matters, which also allowed it to access confidential information material to this action.

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 3

    I.      Quinn Emanuel Becomes One of Uber's Most Trusted Law Firms. ............................ 3

    II.     Quinn Emanuel Defends Uber in Substantially Related Litigation Matters Between 2012 and 2016. .................................................................................... 4

    III.    Quinn Emanuel Advises Uber on Non-Litigation Matters Related to This Lawsuit. ..................................................................................................... 7

    IV.    Quinn Emanuel Is Also Conflicted Through Its Current Representation In Another Matter. ............................................................................................... 8

    V.     Quinn Emanuel Brings This Case Against Uber. ......................................................... 9

LEGAL STANDARD ........................................................................................................... 9

ARGUMENT ...................................................................................................................... 11

    I.      Quinn Emanuel's Representation Of Uber In Substantially Related Litigation Matters Compels Its Disqualification. ................................................... 12

         A.    There are substantial factual similarities between SCI's claims and Quinn Emanuel's prior work for Uber. ........................................................ 12

             1.     *Yellow Cab Co. v. Uber Technologies, Inc*. (District of Maryland) ......................................................................................... 12

             2.     *Boston Cab Dispatch v. Uber Technologies, Inc*. (District of Massachusetts) ................................................................................ 13

             3.     *Greater Houston Transportation Co. v. Uber Technologies, Inc*. (Southern District of Texas) ................................................................ 15

         B.    There is material overlap between the legal questions presented in SCI's Complaint and the prior litigation matters handled by Quinn Emanuel. ................................................................................................ 17

         C.    Quinn Emanuel lawyers were deeply involved in every aspect of the litigation matters they handled for Uber. ................................................. 19

    II.     Quinn Emanuel Must Be Disqualified Because It Advised Uber On Substantially Related Non-Litigation Matters. ...................................................... 21

    III.    The Conflict Of Interest Of Certain Attorneys At Quinn Emanuel Is Imputed Directly To The Entire Firm. ............................................................................. 23

    IV.    No Discretionary Or Equitable Reason Weighs Against Disqualifying Quinn Emanuel. ............................................................................................... 24

CONCLUSION ................................................................................................................... 24

Gibson, Dunn & Crutcher LLP

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Acacia Patent Acquisition, LLC v. Superior Court of Orange County*,
234 Cal. App. 4th 1091 (Ct. App. 2015)............................................................................23

*All American Semiconductor, Inc. v. Hynix Semiconductor, Inc.*,
No. C 06-2915, 2008 WL 5484552 (N.D. Cal. Dec. 18, 2008) ......................................24

*Beltran v. Avon Products, Inc.*,
867 F. Supp. 2d 1068 (C.D. Cal. 2012)..........................................12, 16, 17, 18, 19, 20

*People ex rel. Department of Corporations v. SpeeDee Oil Change Systems, Inc.*,
20 Cal. 4th 1135 (1999) ...................................................................................2, 10, 11

*Diva Limousine, Ltd. v. Uber Technologies, Inc.*,
No. 18-cv-05546-EMC, 2019 WL 144589 (N.D. Cal. Jan. 9, 2019)......................16, 18, 20, 23, 24

*Employers Insurance of Wausau v. Albert D. Seeno Construction Co.*,
692 F. Supp. 1150 (N.D. Cal. 1988) ...............................................................................11

*Epikhin v. Game Insight North America*,
No. 14-CV-04383-LHK, 2015 WL 2229225 (N.D. Cal. May 12, 2015) .........................9

*Farris v. Fireman's Fund Insurance Co.*,
119 Cal. App. 4th 671 (Ct. App. 2004).....................................................................11, 13

*Flatt v. Superior Court of Sonoma County*,
9 Cal. 4th 275 (1994) ..........................................................................................1, 11, 23, 24

*Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH*,
No. 08-cv-04909 SI, 2010 WL 1136478 (N.D. Cal. Mar. 20, 2010)..............................23

*Global Van Lines, Inc. v. Superior Court of Orange County*,
144 Cal. App. 3d 483 (Ct. App. 1983) ...........................................................................10

*H.F. Ahmanson & Co. v. Salomon Bros., Inc.*,
229 Cal. App. 3d 1445 (Ct. App. 1991) ..................................................................3, 10, 12, 15

*Jessen v. Hartford Casualty Insurance Co.*,
111 Cal App. 4th 698 (Ct. App. 2003).....................................................10, 13, 18, 19, 22, 24

*Johnson v. Superior Court of Riverside County*,
159 Cal. App. 3d 573 (Ct. App. 1984) ...........................................................................10

*LeapFrog Enterprises, Inc. v. Epik Learning, LLC*,
No. 16-CV-04269-EDL, 2017 WL 2986604 (N.D. Cal. Feb. 23, 2017) ........................20

*Oliver v. SD-3C, LLC*,
No. C 11-01260 JSW, 2011 WL 13156460 (N.D. Cal. Aug. 4, 2011) ..............20, 21, 22

ii

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Openwave Systems, Inc. v. 724 Sols. (US) Inc.*,
    No. C 09-3511 RS, 2010 WL 1687825 (N.D. Cal. Apr. 22, 2010) ................................18

*Philadelphia Taxi Association, Inc. v. Uber Technologies, Inc.*,
    886 F.3d 332 (3d Cir. 2018).........................................................................................8, 22

*Rosenfeld Construction Co. v. Superior Court of Fresno County*,
    235 Cal. App. 3d 566 (Ct. App. 1991) ...........................................................................3

*Spectrum Sports, Inc. v. McQuillan*,
    506 U.S. 447 (1993) .......................................................................................................17

*Sunbeam Products Inc. v. Oliso, Inc.*,
    No. C 13-03577 SI, 2014 WL 892918 (N.D. Cal. Mar. 4, 2014) .....................................9

*Trone v. Smith*,
    621 F.2d 994 (9th Cir. 1980)..............................................10, 11, 13, 15, 16, 21, 23, 24

*Western Sugar Cooperative v. Archer-Daniels-Midland Co.*,
    98 F. Supp. 3d 1074 (C.D. Cal. 2015)...........................................................................24

**Statutes**

Civil Local Rule 3-12(a) .........................................................................................................18

Civil Local Rule 11-4(a)(1).........................................................................................................9

Maryland Code Annotated, Commercial Law, § 11–202(a)(2) ...............................................17

**Other Authorities**

Cyrus Farivar, *Lyft, SideCar, and Uber all slapped with $20K fines from CA regulator*, ARS TECHNICA, Nov. 14, 2012, *available at* https://arstechnica.com/tech-policy/2012/11/lyft-sidecar-and-uber-all-slapped-with-20k-fines-from-ca-regulator/ ..............................................................................2

Melissa Daniels, *Quinn Dropped Uber Due To Fixed Fee Program, Doc Says* (July 21, 2017), *available at* https://www.law360.com/articles/947172/quinn-dropped-uber-due-to-fixed-fee-program-doc-says ................................................................9

Order Sustaining Demurrers with Leave to Amend 5, *Uber Techs. Pricing Cases*, Judicial Council Coordination Proceeding No. 4925 (Cal. Super. Ct. Jan. 30, 2018).....................8

**Rules**

California Rule of Professional Conduct 1.9 .........................................................................10

Gibson, Dunn &
Crutcher LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

For nearly four years, from 2012 to 2016, Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") represented Uber Technologies, Inc., and its affiliates (collectively, "Uber"), serving as its trusted outside counsel and defending it in at least 20 cases. Sixteen of those cases were brought by plaintiffs who alleged that Uber engaged in various means of unfair competition. Here, Quinn Emanuel represents SC Innovations, Inc. ("SCI"), the purported assignee of certain litigation rights of Sidecar Technologies, Inc. ("Sidecar"), a defunct Uber competitor who also alleges that Uber unfairly competed against it. SCI claims that Uber stifled competition by pricing at predatory levels and "intentionally interfer[ing] with the performance and quality of competing ride-hailing apps." *SCI* Compl. ¶ 9, ECF No. 1.

But these are precisely the same types of claims against which Quinn Emanuel had previously defended Uber. *See, e.g.*, Compl., *Yellow Cab Co. v. Uber Techs., Inc.*, No. 1:12-CV-07967 (D. Md. Aug. 28, 2014), ECF No. 2 ("*Yellow Cab* Compl.") (alleging that Uber engaged in predatory pricing, monopolization, attempted monopolization, and tortious interference). Now, three years after Sidecar's dissolution, Quinn Emanuel represents SCI in seeking compensation for the purported "damages caused by Uber," its former client, and in "bring[ing] an end to Uber's anticompetitive practices." *SCI* Compl. ¶ 1. Because Quinn Emanuel represented Uber in substantially related matters, its "access to confidential information [about Uber] . . . is *presumed*," and disqualification of Quinn Emanuel "is mandatory" under California law. *Flatt v. Superior Court*, 9 Cal. 4th 275, 283 (1994). But Uber does not need to resort to a presumption. There is no serious question that Quinn Emanuel was *actually* privy to mountains of confidential material, including sensitive information related to Uber's entry into new markets, competitive tactics, business strategy, pricing, and litigation strategies—information directly relevant to this lawsuit.

Uber asked its former longtime outside counsel to withdraw from this conflicted representation, but Quinn Emanuel refused. Uber therefore has no choice but to move to disqualify Quinn Emanuel because, during the very same timeframe that Uber and its "senior executives and officers" allegedly "directed a series of anticompetitive tactics that were specifically designed to

Gibson, Dunn &
Crutcher LLP

thwart true competition," *SCI* Compl. ¶ 83, Quinn Emanuel served as one of Uber's closest legal advisors, counseling the company and its senior executives on the very same conduct that it now asserts is illegal on behalf of a client adverse to Uber.

More specifically, Uber relied heavily on Quinn Emanuel to navigate a thicket of unfair competition and antitrust issues that cropped up in the midst of a period of tremendous growth and business transformation for the nascent company.  As Uber confronted legal challenges resulting from its rapid expansion, and sought a partner to help construct its nationwide litigation and regulatory strategy on competition matters, it repeatedly turned to Quinn Emanuel for real-time advice, including on the conduct that is at the heart of SCI's claims.  Although Quinn Emanuel's founder and managing partner, John Quinn, got it right when he said that "Uber would rather compete for business on the streets . . . than in the courtroom,"[1] as noted above, Quinn Emanuel's attorneys went on to defend Uber in at least 16 lawsuits filed in federal and state courts throughout the country that involved allegations of unfair competition and antitrust violations akin to the ones in SCI's Complaint.[2]

Quinn Emanuel's representation of SCI offends the two ethical duties owed by counsel in any attorney-client relationship:  the duty of confidentiality and the duty of "undivided loyalty."  *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1146 (1999).  The "scrupulous administration of justice and the integrity of the bar" cannot tolerate Quinn Emanuel's conduct.  *Id.* at 1145.  California's ethical rules—which apply to attorneys practicing before this Court—compel Quinn Emanuel's disqualification.

---

[1]   Cyrus Farivar, *Lyft, SideCar, and Uber all slapped with $20K fines from CA regulator*, Ars Technica, Nov. 14, 2012, *available at* https://arstechnica.com/tech-policy/2012/11/lyft-sidecar-and-uber-all-slapped-with-20k-fines-from-ca-regulator/.

[2]   Quinn Emanuel also represented Uber as counsel of record in other cases that did not involve unfair competition claims.  Decl. of Jason B. Allen in Supp. of Defs.' Mot. to Disqualify ("Allen Decl.") ¶ 10.

Gibson, Dunn & Crutcher LLP

DEFENDANTS' MOTION TO DISQUALIFY QUINN EMANUEL URQUHART & SULLIVAN LLP
– CASE NO. 3:18-CV-07440-JCS

# FACTUAL BACKGROUND[3]

## I.    Quinn Emanuel Becomes One of Uber's Most Trusted Law Firms.

Uber was introduced to Quinn Emanuel in October 2012.  Shortly thereafter, Uber retained Quinn Emanuel to defend the company in one of its first lawsuits, *Yellow Group LLC v. Uber Technologies, Inc.*, No. 1:12-cv-07967, filed in the United States District Court for the Northern District of Illinois.  Decl. of Salle Yoo in Supp. of Defs.'s Mot. to Disqualify ("Yoo Decl.") ¶ 5.  The plaintiffs alleged that Uber engaged in unfair competition by failing to comply with certain regulations governing taxis and other for-hire vehicle transportation services.  A series of similar cases filed by other taxicab operators around the country followed and Quinn Emanuel was retained to handle virtually all of them—experience it later touted when attempting to secure additional work from Uber.  Decl. of Jennifer Ghaussy in Supp. of Defs.' Mot. to Disqualify ("Ghaussy Decl.") ¶¶ 6, 20 & Ex. A; Decl. of Jason B. Allen in Supp. of Defs.' Mot. to Disqualify ("Allen Decl.") ¶ 6.

When the *Yellow Group* lawsuit was filed, Uber had only one in-house attorney, its former General Counsel, Salle Yoo.  Yoo Decl. ¶ 6.  Ms. Yoo believed that Uber would be best served by having a single law firm act as Uber's adviser in crafting a consistent national strategy to respond to this wave of unfair competition lawsuits and providing advice on issues that might implicate antitrust and unfair competition laws.  *Id.*  Quinn Emanuel was selected for that assignment.  *Id.*; Allen Decl. ¶ 6; Ghaussy Decl. ¶ 6.  Quinn Emanuel understood its role; described itself as Uber's partner; prided itself on attaining deep knowledge of Uber's business model, personnel, and operations; and, as envisioned, went on to advise Uber on competition issues and to defend Uber in at least 16 lawsuits alleging violations of unfair competition laws.  *Id.*

Apart from its work on competition-related matters, Quinn Emanuel counseled Uber on an array of other legal issues, further demonstrating the close relationship between the firm and its

---

[3]    By filing this motion and its supporting papers, and discussing the matters herein, Uber does not waive any applicable attorney-client privilege, work-product protection, or any other applicable privilege or protection.  *See generally Rosenfeld Constr. Co. v. Superior Court*, 235 Cal. App. 3d 566, 573–74 (Ct. App. 1991) ("[T]o require a client to show the nature of the confidential information 'would tear aside the protective cloak drawn about the lawyer-client relationship. For the Court to probe further and sift the confidences in fact revealed would require the disclosure of the very matters intended to be protected . . . .'"); *H.F. Ahmanson & Co. v. Salomon Bros., Inc.*, 229 Cal. App. 3d 1445, 1453 (Ct. App. 1991) (noting that it would be "ironic" if client confidences had to be disclosed to disqualify counsel).

client.  For example, Quinn Emanuel served as counsel of record for Uber in other types of matters as varied as patent and personal injury litigation.  Allen Decl. ¶ 10.  Quinn Emanuel's work for Uber was so extensive that it encompassed advising the fledgling company as it established internal policies and protocols.  For example, Quinn Emanuel counseled Uber on its internal document retention policies and helped shape its preservation requirements.  Ghaussy Decl. ¶ 25.  Remarkably, Quinn Emanuel's attorneys even handled a matter that involved evaluating a letter from Sunil Paul,[4] a founder of SCI's assignor and Uber's former competitor, Sidecar, regarding a patent he claimed to hold.  *Id*. ¶ 22.  SCI's Complaint does not reveal whether SCI is a successor in interest to Sidecar's intellectual property, but the Complaint certainly hints at a possible theory of infringement by Uber.[5] *See* Compl. ¶¶ 44–45 ("Sidecar [] was the first Ride-Hailing App to provide several key features . . . . Uber and Lyft have since copied these features and implemented them in their own Ride-Hailing Apps, where they have become popular product features.").

## II.     Quinn Emanuel Defends Uber in Substantially Related Litigation Matters Between 2012 and 2016.

Quinn Emanuel quickly cemented its relationship with Uber and defended the company in a string of lawsuits that are substantially related to SCI's Complaint.  The recurring claim in these many actions was—as here—that Uber's allegedly unfair business conduct and rapid expansion caused injury to competing service providers.  An overview of some of the most relevant matters illustrates the substantial relationship between Quinn Emanuel's successive representation of Uber and SCI.[6]

---

4   Mr. Paul appears to retain an interest in SCI.  *See* Certif. of Interested Entities by SC Innovations, Inc., *SCI* ECF No. 3.

5   To the extent that any amended complaint by SCI asserts any intellectual-property claims, this prior representation would provide independent support for disqualifying Quinn Emanuel.

6   This is not an exhaustive collection, by any means.  Other unfair competition matters handled by Quinn Emanuel raised legal and factual questions that are substantially related to those in SCI's Complaint.  *See, e.g.*, Decl. of Kevin Yeh in Supp. of Defs.' Mot. to Disqualify Ex. A, Mem. in Supp. of Appl. for TRO and Prelim. Inj. Against Defs. 8, *Albuquerque Cab Co. v. Uber Techs., Inc.*, No. D-202-CV-201405912 (N.M. 2d. Jud. Dist. Ct. Sept. 16, 2014) (alleging violations of New Mexico Unfair Practices Act because Uber is "essentially offering free rides" and "[b]ecause of this unfair competition, Plaintiffs have suffered noticeable losses" as "Uber continue[s] to

In *Yellow Cab Co. v. Uber Technologies, Inc.*, filed in 2014 in Maryland state court and removed to the United States District Court for the District of Maryland, the plaintiffs—a group of Maryland cab companies, associations, and drivers—sued Uber based on factual allegations and legal theories nearly identical to SCI's.  Like Quinn Emanuel's new client, SCI, the Yellow Cab plaintiffs attacked UberX pricing as predatorily low.[7]  *Compare Yellow Cab* Compl. ¶ 110 ("through its uberX service, Uber forces its Providers and Drivers to charge mandatory, uniform prices so far below the market rate as to constitute illegal predatory pricing with which Plaintiffs and the Association Members are unable to compete"), *with SCI* Compl. ¶ 6 ("One of the anticompetitive practices that Uber employed was predatory pricing").  Both *Yellow Cab* and *SCI* allege that Uber engaged in tortious conduct that interfered with plaintiffs' relationships with riders and drivers.  *Compare Yellow Cab* Compl. ¶¶ 2, 6 (alleging "tortious interference with Plaintiffs' business relationships with its customers and contract drivers" and that Uber "improperly and unlawfully induc[es] drivers to contract with Uber"), *with SCI* Compl. ¶ 9 (alleging that Uber "intentionally interfered with the performance and quality of competing ride-hailing apps" and used "fraudulently requested trips as an opportunity to convince drivers to work exclusively with Uber instead of its competitors").  And both cases allege that Uber had a specific plan to monopolize the relevant market and destroy competition.  *Compare Yellow Cab* Compl. ¶ 4 (alleging "well-planned efforts to monopolize th[e] industry and destroy competition"), *with SCI* Compl. ¶¶ 7–9 (alleging that "Uber's most senior officers and

---

squeeze them out of the market"); Am. Compl., *Ehret v. Uber Techs., Inc.*, No. 14-CV-00113-EMC (N.D. Cal. Apr. 28, 2014), ECF No. 40 (bringing Unfair Competition Law claim regarding aspects of Uber's pricing nationwide, including geographies alleged in SCI's Complaint); Yeh Decl. Ex. B, Compl. ¶¶ 33, 55, 83 *Ezeokoli v. Uber Techs., Inc.*, No. RG14747166, (Cal. Super. Ct., Alameda Cnty., Nov. 5, 2014) (alleging that Uber "owns no cars, no permits, no radio associations, and employs no drivers"; engages in tortious interference; and "'partners' with taxicab drivers who make an illegal side deal with [Uber] to deliver customers"); Second Am. Compl. ¶¶ 1–3, 44, 55, *Goncharov v. Uber Techs., Inc.*, No. CGC-12-526017 (Cal. Super. Ct., S.F. Cnty., Jan. 7, 2016) (alleging unlawful competition and interference with taxi drivers' business, and that Uber is a transportation company subject to California Public Utilities Commission's jurisdiction); First Am. Compl. ¶¶ 5, 25, *Yellow Grp. LLC v. Uber Techs., Inc.*, No. 12 C 7967 (N.D. Ill. Dec. 20, 2012), ECF No. 17 (alleging that Uber is "circumventing legally established rates and pricing models" and "tortiously interferes with the contractual relationship between Plaintiffs and the drivers" in Chicago).

[7]  A case brought by taxi drivers in Atlanta (and defended by Quinn Emanuel) similarly alleged that Uber unfairly "offer[s] and collect[s] lower fares."  Second Am. Compl. ¶ 53, *McCandliss v. Uber Techs., Inc.*, 1:14-03275-WSD (N.D. Ga. June 15, 2015), ECF No. 53.

Gibson, Dunn &
Crutcher LLP

1    executives specifically planned for this subsidized pricing strategy to foreclose competition" and

2    "[t]o obtain and protect its monopoly").

3           Similarly, in *Boston Cab Dispatch, Inc. v. Uber Technologies, Inc.*, filed in the United States

4    District Court for the District of Massachusetts, the fundamental claim was that Uber engaged in

5    unfair practices to avoid competition on the merits.[8]  Compl., *Boston Cab Dispatch, Inc. v. Uber*

6    *Techs., Inc.*, No. 1:13-cv-10769-NMG (D. Mass. Apr. 3, 2013), ECF No. 1-1 ("*Boston Cab*

7    Compl.").  During this multi-year representation, Quinn Emanuel was undeniably exposed to

8    confidential information by engaging in extensive discovery, which gave Quinn Emanuel access to

9    facts relevant to the *SCI* Complaint's allegations of predatory pricing by Uber in Boston—one of the

10   geographic markets identified in SCI's Complaint—and elsewhere.  For example, the plaintiffs in

11   *Boston Cab* served, and received responses from Uber to, scores of discovery requests—over

12   objections lodged by Quinn Emanuel—related to Uber's "pricing strategy" and, more broadly, past

13   and future changes in pricing models for Uber services and Uber's overall operations.  Ghaussy Decl.

14   ¶¶ 16–17.

15          Quinn Emanuel's representation of Uber in *Greater Houston Transportation Co. v. Uber*

16   *Technologies, Inc.*—an unfair competition case that Quinn Emanuel helped settle on the eve of trial

17   in February 2016—also shares common ground with SCI's lawsuit.  As in this case, the plaintiffs

18   took the position that they would have been more successful but for Uber's allegedly illegal conduct.

19   *See* Compl. and Appl. for TRO, *Greater Houston Transp. Co. v. Uber Techs., Inc.*, No. 4:14-cv-

20   00941 (S.D. Tex. Apr. 8, 2014), ECF No. 1.  For instance, the plaintiffs' expert submitted a

21   declaration challenging Uber's pricing practices for allegedly falling below a profitable level.

22   Ghaussy Decl. ¶ 14.  Uber's expert, under Quinn Emanuel's direction, opined that the plaintiffs'

23   decline might be more directly attributable to "unrelated marketplace events and conditions,"

24   including the "lawful actions of the Defendants," "changes in economic climate," "competition from

25   Lyft, competition from other taxi companies, or a decline in the demand for [plaintiff's] services for

26   _____

27   [8]   Both cases also allege that Uber interfered with the plaintiffs' relationships with drivers.  *SCI*
         Compl. ¶¶ 98–99 ("Uber Intentionally and Tortiously Interfered with Sidecar's App and Its
28       Relationships with Passengers and Drivers"); *Boston Cab* Compl. ¶ 77 ("Uber intentionally
         interferes with the contractual relationships between the plaintiffs and cab drivers.").

any other reason, such as changes in the overall trend of economic growth." *Id.* This precise analysis will be important here should SCI's Complaint survive dismissal—except now, Quinn Emanuel will be on the other side.

### III.   Quinn Emanuel Advises Uber on Non-Litigation Matters Related to This Lawsuit.

During Quinn Emanuel's nearly four-year representation, it counseled Uber on antitrust issues and helped respond to accusations of anticompetitive conduct, Yoo Decl. ¶¶ 6–8; Ghaussy Decl. ¶ 19; Allen Decl. ¶¶ 5–6—all issues squarely relevant to this case, including:  (1) the advisability of certain pricing decisions; (2) allegations of tortious interference with competitors' ride-hail platforms; (3) the scope of the "relevant market" in which Uber competes; and (4) whether Uber is subject to the jurisdiction of certain regulators.

*First*, during the earliest days, Uber's General Counsel sought antitrust advice from Quinn Emanuel regarding its business model, including from the firm's founder and managing partner, John Quinn.  Yoo Decl. ¶ 8.  Uber also sought advice from Quinn Emanuel on pricing questions, including whether pricing decisions would have any effect on unfair competition litigation pending against the company.  Ghaussy Decl. ¶ 23.  One inquiry related to a geographic market identified in SCI's Complaint.  *See SCI* Compl. ¶ 46; Ghaussy Decl. ¶ 23.

*Second*, in 2014, Quinn Emanuel provided counseling related to conduct alleged in paragraphs 99 to 115 of SCI's Complaint, detailing Uber's purported involvement in "a covert campaign to undermine the performance of its competitors' Ride-Hailing Apps, including Sidecar's App."  Ghaussy Decl. ¶ 21; *SCI* Compl. ¶ 100.

*Third*, Quinn Emanuel developed legal arguments and strategy for Uber that the firm now appears to have adapted and repurposed to bolster SCI's antitrust claims.  For example, Quinn Emanuel helped craft the argument Uber asserted in early litigation and various regulatory proceedings that Uber did not compete with taxicabs.  *See, e.g.*, Mem. in Supp. of Def.'s Mot. to Dismiss 10, *Boston Cab Dispatch v. Uber Techs., Inc.*, No. 1:13-cv-10769-NMG (D. Mass. Apr. 10, 2013), ECF No. 6; Ghaussy Decl. ¶ 24.  Now, SCI's Complaint invokes that language to support its assertion that the relevant market is limited to rideshare app developers.  *See SCI* Compl. ¶ 57 (quoting Uber's statements to state regulatory agencies in 2013).  These quotations reflect an

outdated view of the current competitive landscape[9] and conflict with positions later articulated by Quinn Emanuel on behalf of Uber,[10] but Quinn Emanuel was a primary architect behind the excerpted statements it now deploys against Uber.  Ghaussy Decl. ¶¶ 6, 24.

*Fourth*, Quinn Emanuel was debriefed on Uber's general regulatory strategy, including as it relates to statements such as those that it now wields against Uber.  Ghaussy Decl. ¶ 24. Additionally, Uber turned to Quinn Emanuel for analysis on, among other regulatory matters, the scope of the California Public Utilities Commission's ("CPUC") jurisdiction.  Allen Decl. ¶ 7.  This advice potentially relates to a key defense to SCI's Unfair Practices Act claim.  *See, e.g.*, Decl. of Kevin Yeh in Supp. of Defs.' Mot. to Disqualify ("Yeh Decl.") Ex. D, Order Sustaining Demurrers with Leave to Amend 5, *Uber Techs. Pricing Cases*, Judicial Council Coordination Proceeding No. 4925 (Cal. Super. Ct. Jan. 30, 2018) (holding that immunity applies where the CPUC "does have the jurisdiction to establish the rates for such a service"); Ghaussy Decl. ¶ 24.

## IV.   Quinn Emanuel Is Also Conflicted Through Its Current Representation In Another Matter.

There is yet another matter that suggests a serious breach of Quinn Emanuel's ethical obligations to Uber (and others) and that creates an independent basis for disqualification in this matter.  Quinn Emanuel has a *current* representation through which it continues to have access to Uber's confidential information that is of relevance to SCI's lawsuit.  This matter is confidential and

---

[9]   *See, e.g.*, *Phila. Taxi Ass'n, Inc. v. Uber Techs., Inc.*, 886 F.3d 332, 345 (3d Cir. 2018) (concluding that Uber competes in a market including taxicabs).

[10]   For example, a witness declaration filed by Quinn Emanuel in *Goncharov v. Uber Technologies, Inc.*, asserted that Uber protects certain data from public disclosure because "Uber operates in a highly competitive environment.  For example, taxi companies have launched their own competitor software 'dispatch' companies and sought TNC licenses for those services . . . and other competitors (*e.g.*, Lyft and Sidecar) could use driver information for their benefit . . . to the competitive disadvantage of Uber."  Yeh Decl. Ex. C, Decl. of Michael Colman, Pt. 2, in Supp. of Def. Uber Techs., Inc.'s Mot. for Clarification/Reconsideration ¶ 3, *Goncharov v. Uber Techs., Inc.*, No. CGC-12-526017 (Cal. Super. Ct., S.F. Cnty. Aug, 28, 2014); *see also* Def. Uber Techs., Inc.'s Reply in Supp. of Its Mot. to Dismiss Pl.'s Am. Compl. 1, *Boston Cab Dispatch*, ECF No. 69 ("There can be no dispute that the relevant market (Boston) has many other transportation service options, many transportation service providers, and other factors influencing demand and revenues.  Plaintiffs failed to plead that the alleged lost revenue was actually caused by Uber's actions rather than the actions of transportation providers or other factors influencing the market.").

Gibson, Dunn &
Crutcher LLP

1    cannot be disclosed on the public record.  Uber respectfully requests an *in camera* hearing with the

2    Court and Quinn Emanuel to provide further information about this representation.  Yeh Decl. ¶ 2.

3    **V.      Quinn Emanuel Brings This Case Against Uber.**

4           Despite their long relationship, in September 2016, Quinn Emanuel informed Uber that their

5    fee arrangement "no longer made financial sense" and proceeded to withdraw from almost all its

6    matters representing Uber.  Melissa Daniels, *Quinn Dropped Uber Due To Fixed Fee Program, Doc*

7    *Says*, Law360 (July 21, 2017), *available at* https://www.law360.com/articles/947172/quinn-dropped-

8    uber-due-to-fixed-fee-program-doc-says; Allen Decl. ¶ 12.  Just over two years later, on December

9    11, 2018, Quinn Emanuel filed this lawsuit, accusing its former client of "an array of anticompetitive

10   acts," and alleging Uber is a monopolist "hell-bent on stifling competition."  *SCI* Compl. ¶¶ 1, 5.

11          Uber was served with the Complaint on December 20, 2018.  Corrected Cert. of Serv., *SCI*

12   ECF No. 21.  Four business days later, Uber notified Quinn Emanuel that it believes Quinn Emanuel

13   is conflicted from representing SCI in this lawsuit.  Decl. of Kevin Yeh in Supp. of Defs.' Mot. for

14   Admin. Relief to Set Briefing Schedule Ex. B, *SCI* ECF No. 15-1.  Uber's master engagement letter

15   with Quinn Emanuel does not provide for any waiver of future conflicts.  Allen Decl. ¶ 8.  And other

16   engagement letters prohibit Quinn Emanuel from taking adverse positions on a new matter

17   "substantially related" to the Uber engagements and for which Quinn Emanuel has confidential

18   information from its Uber engagements material to that new matter.  *Id.*  Nevertheless, Quinn

19   Emanuel refuses to withdraw.  Uber now moves to disqualify Quinn Emanuel.

                                    **LEGAL STANDARD**

21          "The right to disqualify counsel is a discretionary exercise of the trial court's inherent

22   powers."  *Epikhin v. Game Insight N. Am.*, No. 14-CV-04383-LHK, 2015 WL 2229225, at *3 (N.D.

23   Cal. May 12, 2015) (citation omitted).  Civil Local Rule 11-4(a)(1) mandates that every attorney who

24   appears before this Court "comply with the standards of professional conduct required of members of

25   the State Bar of California."  Accordingly, this Court looks to California law to determine whether

26   counsel should be disqualified.  *Sunbeam Prods. Inc. v. Oliso, Inc.*, No. C 13-03577 SI, 2014 WL

27   892918, at *1 (N.D. Cal. Mar. 4, 2014).  Under California law, an attorney owes her client a duty of

28   loyalty and a duty of confidentiality.  *Id.* at *3.  While courts are hesitant to interfere with a client's

right to counsel of its choice, the Supreme Court of California has underscored that "[t]he important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process" and "[t]he paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." *SpeeDee Oil*, 20 Cal. 4th at 1145.

"It is beyond dispute [that] a court may disqualify an attorney from representing a client with interests adverse to those of a former client." *H.F. Ahmanson & Co. v. Salomon Bros., Inc.*, 229 Cal. App. 3d 1445, 1451 (Ct. App. 1991) (citations omitted). "Disqualification in cases of successive representation," as here, "is based on the prohibition against employment adverse to a former client where, by reason of the representation of the former client, the attorney has obtained confidential information material to the employment." *Id.* (quotation marks, brackets, and ellipses omitted); *see* Cal. R. Prof. Conduct 1.9 ("A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in . . . a substantially related matter in which that person's interests are materially adverse to the interests of the former client . . . ."). Disqualification is automatic if the former client does not consent, and "[t]he court does not engage in a 'balancing of equities' between the former and current clients." *H.F. Ahmanson*, 229 Cal. App. 3d at 1451. "The rights and interests of the former client will prevail." *Id.*

"If there is a *reasonable probability* that confidences were disclosed which *could* be used against the client in later, adverse representation, a substantial relation between the two cases is *presumed*," and disqualification is warranted. *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir. 1980) (emphases added). Of course, actual possession of the former client's confidential information is sufficient to warrant disqualification, but establishing actual possession is not required because "'it is not within the power of the former client to prove what is in the mind of the attorney.'" *Id.* at 1453 (quoting *Global Van Lines, Inc. v. Super. Ct. of Orange Cnty.*, 144 Cal. App. 3d 483, 489 (Ct. App. 1983)). Rather, all that is necessary is that "'a substantial relationship has been shown to exist between the former representation and the current representation.'" *Id.* at 1454 (quoting *Johnson v. Superior Court*, 159 Cal. App. 3d 573, 578 (Ct. App. 1984)). Whether the facts or legal questions are similar depend on whether they are "material." *Jessen v. Hartford Cas. Ins. Co.*, 111 Cal App. 4th

Gibson, Dunn & Crutcher LLP

1    698, 713 (Ct. App. 2003).  For information to be material, "it must be found to be directly at issue in,

2    or have some critical importance to, the second representation."  *Farris v. Fireman's Fund Ins. Co.*,

3    119 Cal. App. 4th 671, 680 (Ct. App. 2004) (emphasis added).

4         The presumption that an attorney has access to privileged and confidential matters relevant to

5    a subsequent representation extends the attorney's disqualification vicariously to the attorney's entire

6    firm.  *SpeeDee Oil*, 20 Cal. 4th at 1146; *see also Trone*, 621 F.2d at 999 ("Once the attorney is found

7    to be disqualified, both the attorney and the attorney's firm are disqualified from suing the former

8    client."); *Employers Ins. of Wausau v. Albert D. Seeno Const. Co.*, 692 F. Supp. 1150, 1164 (N.D.

9    Cal. 1988) ("[B]ecause as a rule an attorney is presumed to have the same knowledge and ethical

10   relationships as all the other attorneys in his firm, if one attorney in a firm is disqualified from a

11   representation, all the attorneys in the firm are."); *Flatt*, 9 Cal. 4th at 283 ("'If a substantial

12   relationship is established, the discussion should ordinarily end.  The rights and interest of the former

13   client will prevail.  Conflict would be presumed; disqualification will be ordered.'") (citation

14   omitted).

## ARGUMENT

16        Quinn Emanuel has an irreconcilable conflict of interest stemming from its nearly four-year

17   attorney-client relationship with Uber.  During that time, Quinn Emanuel attorneys advised or served

18   as counsel of record for Uber in at least 16 cases involving unfair competition claims, and were

19   among Uber's closest legal advisors.  A large swath of Quinn Emanuel's work for Uber substantially

20   relates to factual and legal issues raised by SCI's Complaint.  Those matters, like this one, implicate

21   the legality of Uber's pricing decisions, business strategy, competitive tactics, and driver recruitment,

22   and the effect of Uber's entry on competition and competitors.  Quinn Emanuel is presumed to have

23   been exposed to confidential information material to this case (and in fact *was* exposed to massive

24   quantities of highly confidential information).  As a result, California law requires Quinn Emanuel's

25   disqualification.

26

27

28

### I.      Quinn Emanuel's Representation Of Uber In Substantially Related Litigation Matters Compels Its Disqualification.

Quinn Emanuel's possession of confidential information is presumed and disqualification is mandated because its prior representations, and work on behalf, of Uber are substantially related to this case.  Three factors are considered in applying the substantial relationship test:  "(1) similarities between the two factual situations, (2) the legal questions posed, and (3) the nature and extent of the attorney's involvement in the cases."  *Beltran v. Avon Products, Inc.*, 867 F. Supp. 2d 1068, 1081 (C.D. Cal. 2012) (citing *H.F. Ahmanson*, 229 Cal. App. 3d at 1455).  Each factor independently supports Quinn Emanuel's disqualification.

### A.      There are substantial factual similarities between SCI's claims and Quinn Emanuel's prior work for Uber.

Factual similarities abound between SCI's allegations and the antitrust and unfair competition cases that Quinn Emanuel handled for Uber, as is evident from the face of the many pleadings.

### 1.      *Yellow Cab Co. v. Uber Technologies, Inc.* (District of Maryland)

The *Yellow Cab* lawsuit is substantially related to SCI's lawsuit.  The plaintiffs in that lawsuit, initially filed in Maryland state court and later removed to federal court, alleged, like SCI, that Uber engaged in predatory pricing.  *Yellow Cab* Compl. ¶ 2.  Also like SCI, they alleged that Uber engaged in tortious interference with the plaintiffs' relationships with riders and drivers.  *Yellow Cab* Compl. ¶ 2.  They alleged that Uber had a specific plan to monopolize the relevant market and destroy competition.  *Yellow Cab* Compl. ¶ 4.  And they alleged that Uber wrongfully poached drivers from its competitors.  *Yellow Cab* Compl. ¶ 6.

These exact factual allegations appear in SCI's Complaint.  *See, e.g.*, *SCI* Compl. ¶ 6 ("One of the anticompetitive practices that Uber employed was predatory pricing"); *SCI* Compl. ¶¶ 98–99 ("Uber Intentionally and Tortiously Interfered with Sidecar's App and Its Relationships with Passengers and Drivers"); *SCI* Compl. ¶¶ 7–9 (alleging that "Uber's most senior officers and executives specifically planned for this subsidized pricing strategy to foreclose competition" and "[t]o obtain and protect its monopoly"); *SCI* Compl. ¶¶ 101–04 (alleging that Uber's actions caused a "reduction in available Drivers" who "switched to Uber").  That these allegations previously were

1   leveled by taxicab drivers and taxicab operators—and not by the purported developer of a ride-

2   hailing app, as here—is irrelevant.  Both cases were brought by competitors and their claims

3   implicate identical factual issues, namely, Uber's pricing practices, competitive tactics, and alleged

4   tortious interference with competitors' business operations.

5        The profound similarities between the allegations in *Yellow Cab* and those asserted in SCI's

6   Complaint are more than sufficient to trigger the presumption that relevant confidential information

7   was shared with Quinn Emanuel.  Again, the disqualification analysis turns on the "similarities

8   between the legal problem involved in the former representation and the legal problem involved in

9   the current representation."  *Jessen*, 111 Cal. App. 4th at 709.  It is enough that the former

10  representation has "*some* critical importance to" the subsequent representation.  *Farris*, 119 Cal. App.

11  4th at 680 (emphasis added).  Unquestionably, whether Uber engaged in a strategy of pricing UberX

12  below cost in order to achieve or maintain a monopoly position, or tortiously interfered with its

13  competitors—the "legal problems" in *Yellow Cab*—are of *much* critical importance to SCI's claims.

14        **2.   *Boston Cab Dispatch v. Uber Technologies, Inc***. **(District of Massachusetts)**

15        Like *Yellow Cab*, Quinn Emanuel's representation of Uber in *Boston Cab* also involves a

16  common factual predicate with SCI's case, *i.e*., Uber engaged in "unfair" or "anticompetitive" acts in

17  competing with companies like Sidecar, who were harmed as a result.  Both cases allege that Uber

18  engaged in tortious interference with the plaintiffs' relationships with drivers.  *SCI* Compl. ¶¶ 98–99;

19  *Boston Cab* Compl. ¶ 77.  Furthermore, the factual claims in *Boston Cab* implicate Uber's

20  competitive strategy and business operations; pricing strategy and financial information; how its

21  entry into Boston affected competition; and whether it unfairly injured other players in the space.

22  In the *Boston Cab* matter, however, there is no need to presume that Quinn Emanuel received

23  confidential information material to SCI's claims.  It is abundantly clear—even from reviewing the

24  public record—that the extensive discovery conducted exposed Quinn Emanuel to facts "which could

25  be used against [Uber] in later, adverse representation."  *Trone*, 621 F.2d at 998.  For example, Quinn

26  Emanuel attempted to fend off several motions to compel responses to the plaintiffs' "sweeping

27  discovery requests" that called for production of, among other things, "detailed financial and trip

28  data," and Uber's "pricing strategy" and the "motivations" behind them.  Pls.' Mot. to Compel the

Produc. of Docs. from Def. 13, *Boston Cab*, ECF No. 98; Def. Uber Techs., Inc.'s Opp'n to Pls.'

Mot. to Compel Docs. 1, 12, *Boston Cab*, ECF No. 101.  Quinn Emanuel acknowledged the

sensitivity of this information, arguing that allowing such discovery introduced "the risk of disclosure

of Uber's highly confidential business information." *Id.* at 1.  Among other things, over Quinn

Emanuel's objections, Uber was ordered to provide its estimated monthly gross revenue and number

of driver-partners going back to 2011.  Order 1, *Boston Cab*, ECF No. 130.

Quinn Emanuel also drafted discovery responses that summarized Uber's fare calculation and

fee structure.  Ghaussy Decl. ¶ 16.  Quinn Emanuel performed research into Uber's competitors in

the Boston market.  *Id*. ¶ 17.  Further, it prepared and defended Uber's 30(b)(6) deposition that

involved these and other confidential topics relevant to SCI's action, such as Uber's Boston

operations and strategy, its pricing methodology, and its driver-partner recruitment efforts.  *Id*. ¶¶ 16–

17.

In addition, Quinn Emanuel engaged experts on Uber's behalf who opined on the positive

effects of Uber's entry into Boston.  One expert quoted the Massachusetts governor's lauding of Uber

for "'deliver[ing] an innovative and important method of transporting customers'" and "'provid[ing]

valuable transportation services to our citizens.'"  *Id*. ¶ 18 n.1.  The expert further explained that

existing studies have concluded that companies like Uber "show positive effects from a public policy

perspective."  *Id.*  These include "better experience for passengers [than] traditional taxicab

transportation" that "meet[s] unmet demand," with "wait times [that] are markedly shorter and more

consistent than those of taxis."  *Id.*; *see also* Yeh Decl. Ex. E, Uber Techs., Inc.'s Mem. in Opp'n to

Pls.' Appl. for TRO and Prelim. Inj. Against Defs. 4, *Albuquerque Cab Co. v. Uber Techs., Inc.*, No.

D-202-CV-201405912 (N.M. 2d. Jud. Dist. Ct. Sept. 24, 2014) (arguing that an injunction against

Uber would not serve the public interest in case alleging violation of New Mexico Unfair Practices

Act in part because "[i]n describing companies like Uber, the FTC said that '[t]hese applications

represent an innovative form of competition'").

Finally, Quinn Emanuel offered expert opinion in *Boston Cab* contradicting the purported

causal connection between Uber's entry and the plaintiffs' alleged injury.  The expert testimony

showed that "Uber has not been the only new entrant in the for-hire transportation market in Boston

Gibson, Dunn &
Crutcher LLP

since 2012. Numerous other services which did not exist in 2011 now compete with taxis, each of which likely reduced demand for [the plaintiffs'] services. In fact, several new transportation-related companies have chosen Boston as their headquarters and as an initial or early launch site . . . ." Ghaussy Decl. ¶ 18 n.1. Sidecar was among the companies identified in the report. *Id.*

All of this discovery (and related strategy) is highly material to SCI's Complaint, which specifically challenges Uber's pricing practices and the competitive effect of Uber's business operations in Boston. *SCI* Compl. at 22–23. Notably, in a mediation brief prepared in the *Boston Cab* matter, Quinn Emanuel took the position that "there is *nothing* unfair or illegal about Uber's business" in Boston. Ghaussy Decl. ¶ 18 (emphasis added). In a 180-degree turn, Quinn Emanuel now asserts that in 2016, Uber was engaged in a scheme to "raise[] prices to supra-competitive levels" in cities around the country, including Boston. *See* Compl. at 22–23 & ¶ 93. Similarly, while representing Uber, Quinn Emanuel engaged experts who opined on the positive effects of Uber's entry into Boston and argued that Uber's entry did not cause the plaintiffs' alleged injury. But now that it represents a client adverse to Uber, Quinn Emanuel claims that "Uber did not acquire and maintain its monopoly by offering a better product or competing on the merits," *SCI* Compl. ¶ 83, and will be seeking to establish on SCI's behalf that it was Uber's unlawful conduct—not legitimate competition—that injured Sidecar and forced it to go out of business.

Throughout its representation of Uber in the *Boston Cab* case, Quinn Emanuel was exposed to confidential information regarding the company's operations in Boston and elsewhere—"confidences [that] were disclosed which *could* be used against [Uber] in later, adverse representation." *Trone*, 621 F.2d at 998 (emphasis added). Disqualification is therefore appropriate where, as here, there is a showing that the former law firm *actually* possesses confidential information adverse to the former client. *H. F. Ahmanson*, 229 Cal. App. 3d at 1459 ("disqualification would be required if Ahmanson can prove Wachtell *in fact* possesses such confidential information").

**3.     *Greater Houston Transportation Co. v. Uber Technologies, Inc*. (Southern District of Texas)**

The factual similarities between SCI's Complaint and Quinn Emanuel's prior work for Uber are also illustrated by the *Greater Houston* case (which Quinn Emanuel nearly took to trial in

February 2016).  There, the plaintiffs' expert charged—echoing SCI's allegations—that Uber unfairly

competed by undercutting taxicab fares in the Houston and San Antonio markets to unprofitable

levels.  Ghaussy Decl. ¶ 14.  That conduct is the core allegation of SCI's case.  *See, e.g.*, *SCI* Compl.

¶ 89 ("[b]etween 2013 and 2016, in the markets where Uber was competing with Sidecar, the average

prices Uber charged Passengers were lower than Uber's average variable cost per transaction").

Similarly, while defending Uber in *Greater Houston*, Quinn Emanuel sought to establish

through expert testimony that Uber's entry did not cause the plaintiffs' alleged injury.  Ghaussy Decl.

¶ 14.  For example, Uber's expert explained that the plaintiffs' decline might have instead been

caused by "unrelated marketplace events and conditions," including the "lawful actions of the

Defendants," "changes in economic climate," "competition from Lyft, competition from other taxi

companies, or a decline in the demand for [plaintiff's] services for any other reason, such as changes

in the overall trend of economic growth."  *Id*.  Of course, as with *Boston Cab*, these arguments and

analyses will be central to this action should SCI's Complaint survive dismissal.  Through its work

for Uber on these cases, Quinn Emanuel and Uber had extensive, "frank discussion of legal and

factual issues relevant to [the claims at issue], including possibly any weaknesses or vulnerabilities in

Uber's arguments."  *Diva Limousine, Ltd. v. Uber Techs., Inc.*, No. 18-cv-05546-EMC, 2019 WL

144589, at *11 (N.D. Cal. Jan. 9, 2019) (Chen, J.); Ghaussy Decl. ¶ 18.  But now, if Quinn Emanuel

were allowed to continue to represent SCI, it would have the benefit of the wealth of insights it

gained from representing Uber in these substantially related matters.

The factual information sought (and obtained) in Quinn Emanuel's prior representations of

Uber is incontestably "material" to this case since it has more than "some critical importance to

[Quinn Emanuel's] second representation."[11]  *Diva Limousine*, 2019 WL 144589, at *3 (citation

omitted) (emphasis added).  Indeed, that knowledge is "vitally related" to proving—and defending

against—SCI's present allegations, which attack Uber's pricing, business strategy, and competitive

strategy.  *Trone*, 621 F.2d at 1000.  "Such information is material to this action, as this case also

---

[11]  Prior representations with factual similarities are not limited to these three cases.  As noted above, factual similarities abound in all 16 unfair competition cases that Quinn Emanuel defended for Uber.  *See supra* note 6.

1   implicates [Uber's] practice[s] . . . and if imparted to Plaintiff, would provide [it] with an unfair

2   litigation advantage" in this case.  *Beltran*, 867 F. Supp. 2d at 1080.

3        **B.**    **There is material overlap between the legal questions presented in SCI's**

4                **Complaint and the prior litigation matters handled by Quinn Emanuel.**

5        The second consideration—similarity in "the legal questions posed"—also supports

6   disqualification.  *Id.* at 1081.  The *Yellow Cab* case provides the plainest example of overlap.  In that

7   case, the plaintiffs alleged a violation of the Maryland Antitrust Act, claiming Uber embarked on a

8   "well-planned effort[] to monopolize th[e] industry and destroy competition."  *Yellow Cab* Compl.

9   ¶ 112.  Although SCI brings its monopolization claims under federal law, the legal analysis is the

10  same, as Quinn Emanuel argued in its opposition to the *Yellow Cab* plaintiffs' motion to remand.  *See*

11  Opp'n to Pls.' Mot. to Remand 11–21, *Yellow Cab*, ECF No. 18 (quoting Md. Code Ann., Com. Law,

12  § 11–202(a)(2) for the proposition that Maryland "courts are to be 'guided by the interpretation given

13  by the federal courts to the various federal statutes dealing with the same or similar matters'" in

14  Maryland's antitrust statute).  That brief primarily relied on federal case law and identified the

15  elements of an attempted monopolization claim: "'(1) that the defendant has engaged in predatory or

16  anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of

17  achieving monopoly power.'"  *Id.* at 19 (citing *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456

18  (1993)).  Those same elements are identified in Count 2 of SCI's Complaint.  *SCI* Compl. ¶¶ 146–54.

19  Indeed, in a later pitch for a case involving (in Quinn Emanuel's words) California's "Unfair

20  Practices Act (antitrust law)"—the basis for one of the causes of action now brought by SCI—Quinn

21  Emanuel cited its work in *Yellow Cab* and noted that "[w]e have experience representing Uber in

22  *exactly* these types of suits" because "[w]e've defended Uber against . . . antitrust claims in the

23  Baltimore litigation."  Allen Decl. ¶ 11 (emphasis added).

24       Also illustrative of the overlap is Quinn Emanuel's opposition to the plaintiffs' motion to

25  remand in *Yellow Cab*.  There, Quinn Emanuel argued that the plaintiffs' claims were legally

26  defective because they failed to allege barriers to entry, noting that "[o]ther transportation providers

27  could reenter the market or new ones could start up."  Opp'n to Pls.' Mot. to Remand 18, *Yellow Cab*,

28

1   ECF No. 18.  Now that it represents SCI, however, Quinn Emanuel has radically shifted course,

2   arguing that "[t]here are high barriers to entry in the market."  *SCI* Compl. ¶ 65.

3       SCI will undoubtedly argue that there is a legal distinction between the unfair competition

4   claims alleged in the majority of the matters Quinn Emanuel handled for Uber and its antitrust and

5   Unfair Practices Act claims.[12]  As another judge in this District recently concluded, however, "the

6   lack of overlap in legal issues is not dispositive."  *Diva Limousine*, 2019 WL 144589, at *10

7   (emphasis added).  Put another way, "identity of claims [is] not required" here because what was

8   "material to [Uber's] prior [] matters is also material to the present lawsuit."  *Beltran*, 867 F. Supp.

9   2d at 1082 (finding a substantial relationship between successive lawsuits "[a]lthough none of the

10  prior Avon cases specifically involved claims that Avon purportedly misrepresented that it did not

11  test on animals").  This flexible approach flows from courts' refusal to "'posit[] overly restrictive

12  limitations on what it is reasonable to assume is communicated between lawyers and their clients,'

13  because 'clients should not be expected to limit themselves to giving their attorneys only the

14  information most relevant or critical to a particular engagement' and 'frequently provide attorneys

15  with far more than the bare minimum the attorneys need to carry out the assignment.'"  *Diva*

16  *Limousine*, 2019 WL 144589, at *10 (quoting *Openwave Sys., Inc. v. 724 Sols. (US) Inc.*, No. C 09-

17  3511 RS, 2010 WL 1687825, at *5 (N.D. Cal. Apr. 22, 2010)).  Here, Quinn Emanuel spearheaded

18  Uber's nationwide unfair competition strategy for nearly four years, and also handled an array of

19  other matters and areas of counseling, leaving little question about whether it received only the

20  narrowest set of confidential information entirely unrelated to this action.

---

22  12   SCI may also argue that Judge White's rejection of Uber's motion to relate this action to another
23  antitrust case pending against Uber is somehow dispositive of the issue of substantial relationship
    between matters.  *See* Order Denying Mot. to Relate, *Desoto Cab Company, Inc. v. Uber Techs.,
24  Inc.*, Case No. 4:16-cv-06385-JSW (N.D. Cal. Jan. 7, 2019), ECF No. 76.  It is not.  The tests are
    entirely different.  Judges in this District will exercise their discretion and grant a motion to relate
25  when (1) "[t]he actions concern substantially the same parties, property, transaction or event;"
    and (2) "[i]t appears likely that there will be an unduly burdensome duplication of labor and
26  expense or conflicting results if the cases are conducted before different Judges."  Civil L. R. 3-
    12(a).  As described above, the test for disqualification only requires a "substantial relationship"
27  and rejects a strict "comparison of the two representations to their precise legal and factual
    issues" because doing so would fail to recognize that "the attorney may acquire confidential
28  information about the client or the client's affairs which may not be directly related to the
    transaction or lawsuit at hand."  *Jessen*, 111 Cal. App. 4th at 712.

Quinn Emanuel, for its part, acknowledged that its unfair competition experience was readily transferable to other legal theories, including those that sound in antitrust:  in pitching for the *Yellow Cab* case, Quinn Emanuel explained that it was well positioned to quickly and efficiently litigate the antitrust claims "[g]iven the overlap between this case and the other taxicab-competitor cases we have."  Ghaussy Decl. ¶ 15.  But even if perfect overlap was required (and it most assuredly is not), Quinn Emanuel's involvement in *Yellow Cab* is, on its own, a sufficient basis for disqualification under the shared-legal-question consideration.[13]

### C.    Quinn Emanuel lawyers were deeply involved in every aspect of the litigation matters they handled for Uber.

During its almost four-year relationship with Uber, Quinn Emanuel was deeply immersed in Uber's litigation docket, spending thousands of billable hours and collecting millions of dollars in fees attending to Uber's legal needs.  Allen Decl. ¶ 9.  It worked closely with Uber's senior executives, its General Counsel, and other in-house counsel.  Yoo Decl. ¶¶ 6–10; Ghaussy Decl. ¶ 6; Allen Decl. ¶ 6.  Uber viewed Quinn Emanuel as a trusted partner and advisor, and Quinn Emanuel continuously sought to deepen and reaffirm that relationship.  Ghaussy Decl. ¶ 20.  In their words, Quinn Emanuel's attorneys learned "every nuance of Uber's business."  *Id.* ¶ 19.

As the California Court of Appeal has recognized, "[d]epending upon the nature of the attorney's relationship with the former client, in the office or in the courtroom, the attorney may acquire confidential information about the client or the client's affairs which may not be directly related to the transaction or lawsuit at hand but which the attorney comes to know in providing the representation to the former client with respect to the previous lawsuit or transaction."  *Jessen*, 111 Cal. App. 4th at 712.  Courts have not hesitated to disqualify counsel where there was "at the very least—a '*reasonable possibility*' that [the former counsel] acquired confidential information regarding" its former client's "business and marketing practices, its litigation and settlement strategies, and its [] protocols that are not publicly available."  *Beltran*, 867 F. Supp. 2d at 1082 (emphasis added).  That is glaringly the case here.

---

[13]  The same is true of each of Quinn Emanuel's 15 other unfair-competition cases it defended on behalf of Uber.  *See supra* note 6.

DEFENDANTS' MOTION TO DISQUALIFY QUINN EMANUEL URQUHART & SULLIVAN LLP – CASE NO. 3:18-CV-07440-JCS

1    Uber's in-house legal team was in regular—and sometimes daily—contact with Quinn

2   Emanuel regarding the series of unfair competition cases that Quinn Emanuel defended.  Ghaussy

3   Decl. ¶ 9; Yoo Decl. ¶ 9.  As noted earlier, discovery was conducted in, among other matters, the

4   *Yellow Group* case in Chicago, the *Greater Houston* case, and the *Boston Cab* case.  There were TRO

5   or preliminary injunction hearings in several other cases.  *See, e.g.*, *Albuquerque Cab Co.* at Sept. 22,

6   2014; *Greater Houston*, ECF at Apr. 21, 2014; *Yellow Group*, ECF No. 57.  Quinn Emanuel handled

7   mediations and settlement negotiations.  Ghaussy Decl. ¶ 18.  Additionally, Quinn Emanuel attorneys

8   had "significant contact" with Uber executives in the course of their representation.  *See Beltran*, 867

9   F. Supp. 2d at 1082 (noting that the relationship between corporate executives and former counsel

10   was relevant to disqualification analysis); Yoo Decl. ¶ 11; Ghaussy Decl. ¶ 7.  Notably, Quinn

11   Emanuel's work on all these matters spanned *all four years* during which SCI claims the alleged

12   anticompetitive activity occurred.  *See, e.g.*, *SCI* Compl. ¶ 132.

13    Apart from factual and legal similarities between these successive matters, courts have

14   recognized that even "*possible* exposure to formulation of policy or strategy" can support a showing

15   of substantial relation.  *Diva Limousine*, 2019 WL 144589, at *6 (citation omitted) (emphasis added).

16   That includes, for example, litigation and settlement strategy even "[d]espite the lack of overlapping

17   identical factual or legal issues."  *Oliver v. SD-3C, LLC*, No. C 11-01260 JSW, 2011 WL 13156460,

18   at *3–4 (N.D. Cal. Aug. 4, 2011) (finding disqualification warranted in part because attorney

19   "participated in discussions concerning case strategy and settlement issues").  After handling at least

20   16 unfair competition matters for Uber, Quinn Emanuel became more than well-acquainted with

21   Uber's business and approach to litigation—a fact that it did not hesitate to tout in repeated pitches it

22   made to take on even more matters for the company.  That Quinn Emanuel served as Uber's trusted

23   legal partner on an array of litigation matters, dating back to the period when Uber had a single in-

24   house attorney, strongly supports disqualification.[14]

_____

26   [14]   *See LeapFrog Enterprises, Inc. v. Epik Learning, LLC*, No. 16-CV-04269-EDL, 2017 WL
        2986604, at *12 (N.D. Cal. Feb. 23, 2017) ("In over twenty years of representing Plaintiff,
27        Cooley has had access to a substantial body of confidential information, from general information
        about Plaintiff's finances to specific information about its litigation strategy, trademark
28        prosecution efforts and business strategy in the tablet market."); *Oliver*, 2011 WL 13156460, at

DEFENDANTS' MOTION TO DISQUALIFY QUINN EMANUEL URQUHART & SULLIVAN LLP
– CASE NO. 3:18-CV-07440-JCS

Gibson, Dunn &
Crutcher LLP

## II.       Quinn Emanuel Must Be Disqualified Because It Advised Uber On Substantially Related Non-Litigation Matters.

Disqualification of Quinn Emanuel is equally warranted because it provided Uber with legal advice on substantially related non-litigation matters.

*First*, as discussed above, although Quinn Emanuel was initially retained to represent Uber in *Yellow Group* and related cases, Ms. Yoo, Uber's former General Counsel, envisioned that Quinn Emanuel would provide strategic advice on compliance with state and federal antitrust laws as well. Yoo Decl. ¶ 6.  Quinn Emanuel, too, understood that Uber viewed it as an important strategic partner in these matters both inside and outside the courtroom.  *Id.* ¶¶ 6–9; Ghaussy Decl. ¶ 20.  Importantly, as Uber was growing and entering new markets, Ms. Yoo sought strategic antitrust compliance advice related to Uber's business model and conduct from Quinn Emanuel attorneys, including founder John Quinn.  Yoo Decl. ¶ 8.  Such topics are directly related and material to SCI's allegations because they involved analysis of competitors and the competitive landscape in various geographic areas, market conditions, pricing, and confidential business strategies.  *Id.* ¶ 10.

*Second*, a non-litigation matter from 2014 is also substantially related to SCI's Complaint. Uber's in-house lawyers sought Quinn Emanuel's legal advice regarding a letter from a competitor alleging anticompetitive conduct in New York City that materially overlaps with SCI's allegations against Uber, including in paragraphs 9–10 and 99–108 of its Complaint.  Ghaussy Decl. ¶ 21.

*Third*, Uber's in-house lawyers discussed Sidecar—SCI's predecessor in interest—with Quinn Emanuel.  Quinn Emanuel evaluated and provided legal advice relating to intellectual property issues brought to Uber's attention by Sidecar's founder.  *Id.* ¶ 22.  Although that matter related to a patent issue and not anticompetitive conduct, given that Sidecar is the complainant in both situations, "there is a reasonable probability that confidences were disclosed which could be used against the client in later, adverse representation, [thus] a substantial relation between the two cases is presumed."  *Trone*, 621 F.2d at 998.

---

*4 ("Despite the lack of overlapping identical factual or legal issues, the Court finds it likely that over the years in which Mr. Healey defended Panasonic and interacted with in-house counsel within the Intellectual Property Department, Panasonic would have revealed confidential information which would be relevant and material to the 'evaluation, prosecution, settlement or accomplishment of the current representation.'").

*Fourth*, Quinn Emanuel's lawyers also closely coordinated with Uber to ensure consistency between regulatory and litigation matters. Ghaussy Decl. ¶¶ 10, 24. In fact, SCI's Complaint cites submissions by Uber to the CPUC and Maryland's Public Service Commission that reflects strategic advice from Quinn Emanuel to assert that Uber does not compete with taxicabs. *See SCI* Compl. ¶ 57 ("By Uber's own admission, its Ride-Hailing App does not compete with taxi cabs or other transportation providers[.]"); Ghaussy Decl. ¶ 24. Of course, that position does not account for Uber's expansion into new product lines,[15] as Quinn Emanuel would later argue. Nonetheless, the point is that Uber had confidential strategy discussions with Quinn Emanuel related to its regulatory positions in order to ensure consistency across Uber's litigation and regulatory proceedings, even concerning matters for which Quinn Emanuel was not the primary outside counsel. *Id.*; Allen Decl. ¶ 7. Quinn Emanuel also prepared legal memoranda, briefs, and advice to Uber on the jurisdiction of the CPUC. Allen Decl. ¶ 7. That advice is material to SCI's claims because the jurisdiction of the CPUC relates to a defense that Uber intends to raise to SCI's Unfair Practices Act claim. The evidence thus "supports a rational conclusion that information material to the evaluation, prosecution . . . or accomplishment of the former representation given its factual and legal issues is also material" to SCI's claims. *Jessen*, 111 Cal. App. 4th at 713.

*Finally*, Quinn Emanuel has gained valuable knowledge regarding, and was intimately involved in advising on, Uber's internal operations, policies, litigation and settlement strategy, and other strategic and business considerations. Ghaussy Decl. ¶ 7; *Oliver*, 2011 WL 13156460, at *3–4 (finding disqualification warranted in part because attorney "participated in discussions concerning case strategy and settlement issues"). Quinn Emanuel's work advising Uber on document retention issues is a prime example of this and could prove relevant here to the extent there is a future discovery dispute. Ghaussy Decl. ¶ 25.

For all these reasons, it is no surprise that senior in-house Uber attorneys who worked closely with Quinn Emanuel believe that SCI's lawsuit is "substantially similar to [matters on which Quinn

---

[15] *See generally Phila. Taxi Ass'n, supra* note 9, at 345 ("Ultimately, Uber's presence in the market, as alleged, created *more* competition for medallion taxicabs, not *less* . . . .").

1   Emanuel advised Uber for years."  Ghaussy Decl. ¶ 26; Allen Decl. ¶ 13; *see also* Yoo Decl. ¶ 11.

2   Disqualification is warranted.

3   **III.     The Conflict Of Interest Of Certain Attorneys At Quinn Emanuel Is Imputed Directly**

4   **To The Entire Firm.**

5          "Where, as here, 'the requisite substantial relationship between the subjects of the prior and

6   the current representations can be demonstrated, access to confidential information by the attorney in

7   the course of the first representation . . . is *presumed*'" and disqualification in the current

8   representation is mandatory.  *Diva Limousine*, 2019 WL 144589, at *12 (quoting with approval *Flatt*,

9   9 Cal. 4th at 283).  "[I]ndeed, the disqualification extends vicariously to the entire firm."  *Flatt*, 9 Cal.

10  4th at 283; *see also id.*

11         Because attorneys at Quinn Emanuel previously served as counsel of record on, and provided

12  legal advice regarding, matters for Uber substantially related to this action, they are disqualified from

13  representing SCI—a party adverse to Uber.  That result is "conclusive" and "justified as a rule of

14  necessity."  *Diva Limousine*, 2019 WL 144589, at *13 (quoting *Acacia Patent Acquisition, LLC v.*

15  *Superior Court*, 234 Cal. App. 4th 1091, 1106 (Ct. App. 2015)).

16         Indeed, that disqualification extends to all of Quinn Emanuel, including the attorneys of

17  record for SCI.  It does not matter that the individual attorneys representing SCI did not work on

18  earlier Uber cases.  The firm may still be disqualified even if the attorneys who previously defended

19  Uber "ha[ve] had no involvement, and ha[ve] not been consulted in this matter."  *Genentech, Inc. v.*

20  *Sanofi-Aventis Deutschland GMBH*, No. 08-cv-04909 SI, 2010 WL 1136478, at *10 (N.D. Cal. Mar.

21  20, 2010) (Illston, J.); *see also Trone*, 621 F.2d at 999 ("Confidential information possessed by one

22  attorney may or may not have been shared with other members of the firm, but the firm as a whole is

23  disqualified whether or not its other members were actually exposed to the information.").[16]

24

25  _____

26  [16]  In 2015, when Uber began its Preferred Counsel Program, Uber naturally invited Quinn Emanuel
    to submit a proposal.  Notably, among other things, Quinn Emanuel's response touted how the
27  firm was tightly integrated and freely shared information internally, stating, "Our lawyers, across
    all offices and practice groups, are in constant communication and share experiences and
28  information liberally.  Partners that join us from other firms consistently say that they have never
    seen so much sharing as at our firm."  Allen Decl. ¶ 8.

Gibson, Dunn &
Crutcher LLP

23

As the Ninth Circuit has explained, "the underlying concern is *the possibility, or appearance of the possibility*, that the attorney may have received confidential information during the prior representation that would be relevant to the subsequent matter in which disqualification is sought." *Trone*, 621 F.2d at 999 (emphasis added). Thus, "whether the attorneys actually possessed or conveyed confidential information is not the test. Rather, [where the movant] has met its burden showing that a 'substantial relationship' exists between the two representations, [the challenged firm] is *conclusively presumed* to possess confidential information material to the present action" and must be disqualified. *W. Sugar Coop. v. Archer-Daniels-Midland Co.*, 98 F. Supp. 3d 1074, 1088 (C.D. Cal. 2015) (citing *Jessen*, 111 Cal. App. 4th at 709).

**IV.    No Discretionary Or Equitable Reason Weighs Against Disqualifying Quinn Emanuel.**

Given the substantial relationship between the matters on which Quinn Emanuel counseled Uber and this case, Quinn Emanuel should be presumptively disqualified. *Flatt*, 9 Cal. 4th at 283; *Diva Limousine*, 2019 WL 144589, at *13. The fact that it actually received confidential information material to this action only reinforces this conclusion. No consideration weighs against this outcome. Uber did not delay in raising the conflict issue with Quinn Emanuel or in bringing this motion. *See SCI* ECF No. 15. Finally, "[t]his case is still in its early stages; no discovery has been conducted nor any dispositive motions litigated." *Diva Limousine*, 2019 WL 144589, at *14; *see also All Am. Semiconductor, Inc. v. Hynix Semiconductor, Inc.*, No. C 06-2915, 2008 WL 5484552, at *11 (N.D. Cal. Dec. 18, 2008) (disqualification for entire firm appropriate where "there is plenty of time for new counsel to get up to speed"). Accordingly, SCI will not be prejudiced by having to find new counsel.

**CONCLUSION**

This case is a paradigmatic example of counsel representing interests adverse to its former client, despite having worked on a string of substantially related matters and presumptively (and actually) being exposed to Uber's confidential information now material to the SCI representation. Any one of these matters is a sufficient basis for disqualification. Uber requested that Quinn Emanuel withdraw; it refused. The Court should not allow Quinn Emanuel to perpetuate this serious conflict of interest. Uber respectfully requests that its motion to disqualify be granted.

1    Dated:  February 15, 2019                    Respectfully submitted,

2

3                                                 /s/ Theodore J. Boutrous, Jr.
                                                  Theodore J. Boutrous, Jr.
4                                                 Daniel G. Swanson
                                                  Cynthia E. Richman
5                                                 Kevin Yeh

6                                                 GIBSON, DUNN & CRUTCHER LLP

7                                                 Attorneys for Defendants Uber Technologies,
                                                  Inc., Rasier, LLC, Rasier-CA LLC, Rasier-PA,
8                                                 LLC, Rasier-DC, LLC, Rasier-NY, LLC, and
                                                  Uber USA, LLC
9

10

11

12

13

14          Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of all

15   documents submitted with this motion has been obtained from each respective signatory therein.

16

17                                     By:   /s/ Theodore J. Boutrous, Jr.
                                             Theodore J. Boutrous, Jr.
18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISQUALIFY QUINN EMANUEL URQUHART & SULLIVAN LLP
– CASE NO. 3:18-CV-07440-JCS