THEODORE J. BOUTROUS, JR., SBN 132099
  tboutrous@gibsondunn.com
DANIEL G. SWANSON, SBN 116556
  dswanson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

CYNTHIA E. RICHMAN (*pro hac vice*)
  crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 11101
Telephone: 202.955.8500
Facsimile: 202.467.0539

KEVIN YEH, SBN 314079
  kyeh@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

Attorneys for Uber Technologies, Inc, Rasier LLC, Rasier-CA LLC, Rasier-PA LLC, Rasier-DC LLC, Rasier-NY LLC, Uber-USA LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SC Innovations, Inc.,<br><br>           Plaintiff,<br><br>      v.<br><br>Uber Technologies, Inc; Rasier LLC; Rasier-CA LLC; Rasier-PA LLC; Rasier-DC LLC; Rasier-NY LLC; Uber-USA LLC,<br><br>           Defendants. | CASE NO. 3:18-CV-07440-JCS<br><br>**DECLARATION OF JENNIFER GHAUSSY IN SUPPORT OF DEFENDANTS' MOTION TO DISQUALIFY QUINN EMANUEL URQUHART & SULLIVAN, LLP**<br><br>**Hearing:**<br>Date:   April 26, 2019<br>Time:  9:30 a.m.<br>Place:  Courtroom G, 450 Golden Gate Avenue, San Francisco, CA<br>Judge:  Hon. Joseph C. Spero |

Gibson, Dunn &
Crutcher LLP

I, Jennifer Ghaussy, declare as follows:

1. I am an attorney licensed to practice in the state of California. I make this declaration in support of Defendants' Motion to Disqualify Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"). I have personal knowledge of the facts set forth herein and, if called and sworn as a witness, I could and would competently testify thereto. By making this declaration, I do not intend to waive any applicable privileges that may be asserted by Uber Technologies, Inc., ("Uber") and its affiliates, including the attorney-client and work-product privileges.

## Background

2. I was employed by Uber from January 2013 to December 2017, most recently as Senior Counsel.

3. Immediately before my employment at Uber, from November 2010 through January 2013, I was a litigation associate at Quinn Emanuel. From the fall of 2008 to November 2010, I was a litigation associate at Irell & Manella LLP. After my employment at Uber, from December 2017 to October 2018, I was employed by ofo US, Limited. I graduated from Harvard Law School in 2008 and received my B.A. from Columbia University in 2004.

4. As one of Uber's early lawyers, my role in the company's legal department was wide-ranging and changed over time. Among other responsibilities, for much of my time at Uber, I supervised a variety of litigation matters, including in the areas of unfair competition, antitrust, personal injury, and complex commercial and putative class action matters.

5. Some of these matters involved claims threatened or brought by Uber's competitors, such as other companies offering ride-hailing or ride-sharing apps, and taxicab and limousine drivers and operators. In general, the plaintiffs in these cases alleged that Uber's business model and conduct violated unfair competition laws. These cases often alleged business tort claims as well, such as tortious interference with contract.


1

DECLARATION OF JENNIFER GHAUSSY IN SUPPORT OF DEFENDANTS' MOTION TO DISQUALIFY QUINN EMANUEL URQUHART & SULLIVAN, LLP – CASE NO. 3:18-CV-07440-JCS

6.     Uber had already retained Quinn Emanuel when I joined the company in January 2013.  From the very beginning, Uber relied heavily on Quinn Emanuel for legal advice.  The firm quickly became one of Uber's most trusted outside counsel.  Although Quinn Emanuel handled an array of legal matters for Uber, one of its important, multi-year assignments was to defend Uber in unfair competition lawsuits filed around the country.  My colleagues and I viewed Quinn Emanuel as a partner to Uber in developing strategy and a consistent approach to respond to these cases.  I consider Quinn Emanuel to be the architect of Uber's unfair competition litigation strategy from 2012 through 2016.  Indeed, Uber retained Quinn Emanuel to defend it in at least 16 unfair competition cases; they are identified in Exhibit A to this declaration.  I worked very closely with Quinn Emanuel attorneys on many of these matters during the almost four-year-period from the time I joined Uber to when Quinn Emanuel withdrew from representing Uber in September 2016.

7.     I understand that Uber is moving to disqualify Quinn Emanuel from representing Plaintiff SC Innovations, Inc. ("SCI"), in this lawsuit due to a conflict of interest arising from the firm's prior representation of Uber.  I read the Complaint filed by SCI and was surprised and disappointed to see that there is substantial and material overlap between SCI's allegations and many of the unfair competition matters in which Quinn Emanuel had previously defended Uber, as well as other legal advice it routinely provided Uber.  Through its attorney-client relationship with Uber, Quinn Emanuel had access to voluminous quantities of Uber's highly confidential strategies and business information.  I believe that much of this confidential information—which includes Uber's revenues, costs, competitive strategies, prices and pricing strategies, ride data, and driver payments, among other things—may be relevant to SCI's lawsuit.  Additionally, over the course of its representation, Quinn Emanuel was also privy to Uber's internal operations; policies; nonpublic views on litigation strategy and settlement strategy; and other strategic and business considerations,

Gibson, Dunn & Crutcher LLP

2

DECLARATION OF JENNIFER GHAUSSY IN SUPPORT OF DEFENDANTS' MOTION TO DISQUALIFY QUINN EMANUEL URQUHART & SULLIVAN, LLP – CASE NO. 3:18-CV-07440-JCS

all as a result of collaborating not only with Uber's legal team but also with its senior business people.

### Quinn Emanuel's Representation of Uber In Unfair Competition Matters

8. One of the first matters that Quinn Emanuel handled for Uber was *Yellow Group LLC, et al. v. Uber Technologies*, *Inc.*, No. 1:12-CV-07967, filed in October 2012 in the U.S. District Court for the Northern District of Illinois. I became responsible for much of the day-to-day management of this litigation when I joined Uber.

9. From January 2013 until August 2016, I was in regular (and sometimes daily) contact with Quinn Emanuel lawyers regarding the *Yellow Group* case and other unfair competition litigation matters that the firm was handling on behalf of Uber. Quinn Emanuel was involved in all aspects of Uber's defense of this case and similar actions.

10. Like many of the other actions in which Uber was represented by Quinn Emanuel, *Yellow Group* concerned allegations of unfair competition by taxicab and limousine operators. The central allegation in *Yellow Group* and similar lawsuits was that Uber's market entry and business conduct harmed competing services. In connection with this case and the others that followed, Quinn Emanuel was deeply involved in confidential strategy discussions regarding Uber's business and competitors and ensured that Uber's regulatory and litigation strategies were aligned.

11. There was discovery in the *Yellow Group* matter. Quinn Emanuel was involved in reviewing Uber's confidential business and strategy documents, including documents related to Chicago, which I understand SCI has identified in its Complaint as a relevant geographic area.

12. Quinn Emanuel also represented Uber in *Greater Houston Transportation Co., et al. v. Uber Technologies, Inc., et al.*, No. 4:14-0941, which was filed in April 2014 in the U.S. District Court for the Southern District of Texas. The plaintiffs in that case, holders of taxicab permits, alleged that Uber and Lyft were unfairly competing in the Greater Houston and San Antonio areas by

Gibson, Dunn & Crutcher LLP

3
DECLARATION OF JENNIFER GHAUSSY IN SUPPORT OF DEFENDANTS' MOTION TO DISQUALIFY QUINN EMANUEL URQUHART & SULLIVAN, LLP – CASE NO. 3:18-CV-07440-JCS

failing to comply with local regulations and by making allegedly false marketing statements. According to the plaintiffs, Uber was unfairly diverting drivers and fares from taxicab operators. The plaintiffs alleged that Uber's conduct violated Texas's unfair competition and tortious interference laws, among other statutes.

13. The *Greater Houston* case proceeded to discovery. I worked closely with Uber's counsel at Quinn Emanuel to develop litigation strategies and evidence to defend against this lawsuit. For example, I attended the 30(b)(6) deposition of a senior Uber employee who had responsibilities for Uber's operations in Houston, Chicago, and other areas; Quinn Emanuel prepared the witness and defended the deposition. In the course of the preparation and deposition itself, Quinn Emanuel was exposed to Uber's confidential information that is material to SCI's Complaint, including confidential information regarding pricing and pricing strategy (including how pricing decisions are made and how its pricing compares to competitive alternatives), competition (including from taxis and limousines), business strategy, and legal compliance. Quinn Emanuel also helped gather and develop evidence regarding the benefits to consumers and communities associated with Uber's entry and the positive effect that Uber's innovative business model had on competition with other transportation options in Houston and San Antonio.

14. As part of the expert discovery in the *Greater Houston* case, the parties submitted expert reports describing what the competitive landscape would have looked like without Uber's allegedly unlawful conduct. The plaintiffs' expert took the position that Uber's business practices were unfair to competing taxicabs because they enabled Uber to undercut fares in the Houston and San Antonio markets to levels below what was required for a profitable operation in the ordinary course of business. Quinn Emanuel was instrumental in developing arguments rebutting assertions that Uber caused injury to the plaintiffs through its competitive conduct. For example, Uber's expert, working under Quinn Emanuel's direction, opined that plaintiffs' decline might be more directly

4
DECLARATION OF JENNIFER GHAUSSY IN SUPPORT OF DEFENDANTS' MOTION TO DISQUALIFY QUINN EMANUEL URQUHART & SULLIVAN, LLP – CASE NO. 3:18-CV-07440-JCS

Gibson, Dunn & Crutcher LLP

attributable to "unrelated marketplace events and conditions," including the "lawful actions of the Defendants," "changes in economic climate," "competition from Lyft, competition from other taxi companies, or a decline in the demand for [plaintiff's] services for any other reason, such as changes in the overall trend of economic growth."  I understand that in SCI's Complaint, Quinn Emanuel now alleges that Uber's pricing was predatorily low and that, contrary to the positions asserted in the *Greater Houston* case, Uber's business success was a result of its anticompetitive tactics, and not its superior products and innovation.  I worked with Quinn Emanuel in settling this matter, and shared with Quinn Emanuel my and Uber's thoughts regarding the strength of the claims, settlement strategy, and risk tolerance.

15. Uber also turned to Quinn Emanuel to defend it in *The Yellow Cab Company, et al. v. Uber Technologies, Inc., et al.*, which was filed in Maryland state court in July 2014.  This is another litigation matter that I managed through early 2015.  The plaintiffs in the *Yellow Cab* case were taxicab companies and drivers who asserted, among other claims, that Uber's pricing practices violated Maryland antitrust laws.  In particular, the plaintiffs in that case alleged that Uber's pricing strategies constituted predatory pricing and price fixing, and were part of attempts to monopolize the industry and destroy competition.  In pitching to handle the *Yellow Cab* case, Quinn Emanuel explained that it was well positioned to quickly and efficiently litigate the antitrust claims "[g]iven the overlap between this case and the other taxicab-competitor cases we have."  Together with Quinn Emanuel, Uber formulated its strategy to respond to the plaintiffs' complaint.  Quinn Emanuel would later tout its antitrust experience in this case when it pitched for a new antitrust matter from Uber, stating, "we've briefed antitrust issues extensively in the Baltimore litigation, and have a big head start . . . ."  I note that the allegations in *Yellow Cab* substantially overlap with those alleged in SCI's Complaint.

Gibson, Dunn & Crutcher LLP

5
DECLARATION OF JENNIFER GHAUSSY IN SUPPORT OF DEFENDANTS' MOTION TO DISQUALIFY QUINN EMANUEL URQUHART & SULLIVAN, LLP – CASE NO. 3:18-CV-07440-JCS

16.     Quinn Emanuel also represented Uber in *Boston Cab Dispatch, et al. v. Uber Technologies., Inc.*, No. 1:13-cv-10769-NMG, filed in the U.S. District Court for the District of Massachusetts in November 2014. *Boston Cab* also involved unfair competition allegations brought by taxicab operators. There was extensive discovery in the *Boston Cab* case, including regarding Uber's competitive and pricing strategy in Boston. Notably, the *Boston Cab* plaintiffs sought information related to Uber's "pricing strategy" in Boston and, more broadly, documents concerning past and future changes in pricing models for Uber services. Quinn Emanuel drafted discovery responses that summarized, among other things, Uber's fare calculation and fee structure.

17.     In addition, I worked with Quinn Emanuel to prepare Uber's Boston General Manager for a 30(b)(6) deposition in the *Boston Cab* case that was taken in March 2016. The deposition was defended by Quinn Emanuel and I recall extensive discussions regarding confidential information in advance of the deposition related to, among other things, Uber's operations in Boston; the competitive landscape in Boston; pricing of UberX in Boston; Uber's revenues in Boston; and Uber's marketing to driver-partners in Boston. Quinn Emanuel also performed research into Uber's transportation competitors in the Boston market. I understand that Boston is another one of the geographic areas at issue in SCI's Complaint.

18.     I also worked with Quinn Emanuel to develop and respond to expert evidence in the *Boston Cab* matter. One of Uber's expert reports noted that Uber had not been the only new entrant in the for-hire transportation market in Boston, and that numerous other services now competed with taxis. The expert report also addressed, in part, the positive effects of Uber's introduction of UberX in the Boston area.[1] Another expert report explained that the plaintiffs failed to show that Uber

---

[1] The report quoted Massachusetts's governor lauding Uber for "deliver[ing] an innovative and important method of transporting customers" and "provid[ing] valuable transportation services to our citizens." The expert further explained that existing studies have concluded that companies like Uber "show positive effects from a public policy perspective." These include "better

Gibson, Dunn & Crutcher LLP

6
DECLARATION OF JENNIFER GHAUSSY IN SUPPORT OF DEFENDANTS' MOTION TO DISQUALIFY QUINN EMANUEL URQUHART & SULLIVAN, LLP – CASE NO. 3:18-CV-07440-JCS

caused injury to competing services, including taxicab operators. Furthermore, I worked with Quinn Emanuel in evaluating settlement options, including preparing materials for mediation. The Quinn Emanuel lawyers who handled the discovery in this case and were steeped in the facts later asserted in a mediation brief that "there is nothing unfair or illegal about Uber's business" in Boston. Throughout its work on the case, Quinn Emanuel and Uber had extensive and candid discussions about the issues in the case, including the strengths and weaknesses of Uber's defenses, and how those might also be relevant in other Uber matters. Ultimately, the case settled and was dismissed with prejudice via stipulation. I understand that the potential benefits of Uber's entry and new offerings, as well as whether other market factors may have affected competition in a given area, may be relevant to defending against SCI's action.

19. In sum, across the multiple unfair competition cases that Quinn Emanuel handled for Uber, its work was wide-ranging, and covered substantive and procedural matters. In consultation with Uber, Quinn Emanuel's attorneys engaged in motion practice; conducted legal research related to antitrust laws, unfair competition laws, tortious interference laws, damages calculation, etc.; propounded, collected, reviewed, and produced discovery; prepared for, took, and defended depositions; represented Uber in TRO/PI hearings; conferred with Uber's in-house counsel and regulatory counsel regarding legal theories and litigation strategies; presented argument in court; prepared for trial; and consulted with Uber regarding settlement amounts and considerations. In the process, Quinn Emanuel received extensive amounts of confidential competitive information about Uber, and gained significant insight into Uber's business, litigation, regulatory, and settlement

---

experience for passengers [than] traditional taxicab transportation" that "meet[s] unmet demand," with "wait times [that] are markedly shorter and more consistent than those of taxis." Another expert reported stated that "Uber has not been the only new entrant in the for-hire transportation market in Boston since 2012. Numerous other services which did not exist in 2011 now compete with taxis, each of which likely reduced demand for [the plaintiffs'] services. In fact, several new transportation-related companies have chosen Boston as their headquarters and as an initial or early launch site . . . ." Sidecar was identified as one such new entrant.

7
DECLARATION OF JENNIFER GHAUSSY IN SUPPORT OF DEFENDANTS' MOTION TO DISQUALIFY QUINN EMANUEL URQUHART & SULLIVAN, LLP – CASE NO. 3:18-CV-07440-JCS

Gibson, Dunn & Crutcher LLP

strategies, all directly and materially relevant to this action. It is no exaggeration, as Quinn Emanuel has touted to Uber, that the firm knows "every nuance of Uber's business."

### Other Matters Involving Quinn Emanuel

20. In addition to the cases described above, Quinn Emanuel repeatedly sought to secure additional work from Uber in order to expand the relationship. The firm's pitches frequently touted its deep understanding of Uber's operations; its familiarity with legal and factual issues relevant to the unfair competition, antitrust, and tortious interference actions; and its extensive experience working with Uber's employees and their ability to understand their thinking and understand Uber's needs. It was precisely because of Quinn Emanuel's deep understanding of Uber, existing knowledge of Uber's confidential business information and strategy, and familiarity with its legal problems and solutions that my colleagues and I repeatedly retained Quinn Emanuel to handle Uber's cases.

21. Quinn Emanuel also counseled Uber on certain issues arising from a letter Uber received from a competitor in August 2014 claiming that Uber had interfered with the functionality of the competitor's ride-hailing app, and making allegations substantially similar to the ones raised in the Complaint in this action.

22. Quinn Emanuel also provided legal advice to Uber related to a letter received in 2014 from Sunil Paul, the founder of Sidecar, which is a former competitor of Uber's that purportedly assigned certain litigation claims to Quinn Emanuel's new client and the plaintiff in this lawsuit, SCI. The letter related to a patent allegedly held by Mr. Paul. At least one of Quinn Emanuel's intellectual property partners assisted Uber in evaluating legal issues raised in the letter.

23. On at least one occasion, Quinn Emanuel counseled Uber on the advisability of proposed pricing changes in light of pending unfair competition litigation. This inquiry related to one of the geographic markets identified in SCI's Complaint.

24. Quinn Emanuel worked with Uber's in-house and outside regulatory attorneys to ensure a consistent approach across Uber's litigation and regulatory matters. Some of Quinn Emanuel's earlier litigation counseling regarding how to characterize Uber as a business informed positions that Uber later took in regulatory proceedings. Quinn Emanuel reviewed and revised certain submissions made to regulatory agencies, even on matters for which they were not the primary counsel. Furthermore, Quinn Emanuel was debriefed on Uber's strategy in dealing with state agencies, such as California's Public Utilities Commission ("CPUC") and Maryland's Public Service Commission ("MPSC"), and was involved in analyzing state agency jurisdiction (or lack thereof) over companies like Uber. I understand that the CPUC's jurisdiction may be an element of Uber's defense to SCI's lawsuit. My colleagues and I frequently consulted with and kept Quinn Emanuel apprised of our filings with regulatory agencies, including sharing confidential information about strategy. I noted that certain statements made by Uber to the CPUC and the MPSC, which were informed in part by Quinn Emanuel's early advice and strategies, are cited in SCI's Complaint as evidence that Uber does not compete with taxis. In fact, statements substantially similar to the CPUC and MPSC statements quoted in SCI's Complaint appear in Uber unfair competition litigation filings made by Quinn Emanuel that pre-date the CPUC and MPSC statements. In other words, Quinn Emanuel is now using against Uber statements and strategies that it helped develop.

25. Quinn Emanuel also advised Uber on its document retention policies and the scope thereof. Relatedly, I worked with Quinn Emanuel to analyze the circumstances under which Uber might be required to implement a document hold. I believe these issues might be relevant and implicated by any suit by SCI against Uber.

## **Conclusion**

26. I am disappointed that Quinn Emanuel would represent a client suing Uber under theories of harm that are substantially similar to those on which Quinn Emanuel advised Uber for

years. I believe that if Uber had understood that to be a possibility when it was choosing counsel, Quinn Emanuel would never have been retained to represent or advise Uber in the matters described above. Nor do I believe Quinn Emanuel would have been given access to any of Uber's sensitive business and legal strategy information.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 15th day of February, 2019, in San Francisco, California.

By: _____
Jennifer Ghaussy

Gibson, Dunn & Crutcher LLP

10

DECLARATION OF JENNIFER GHAUSSY IN SUPPORT OF DEFENDANTS' MOTION TO DISQUALIFY QUINN EMANUEL URQUHART & SULLIVAN, LLP – CASE NO. 3:18-CV-07440-JCS

# Exhibit A

## Quinn Emanuel's Representation of Uber

This chart identifies 16 federal and state cases in which Quinn Emanuel defended Uber against claims related to unfair competition.

|    | **Case** |
|----|----------|
| 1  | *Albuquerque Cab Co., Inc. v. Uber Technologies Inc.*, No. D-202-CV-201405912 (N.M. Dist. Ct.) |
| 2  | *Boston Cab Dispatch, Inc. v. Uber Technologies, Inc.*, No. 1:13-CV-10769-NMG (D. Mass.) |
| 3  | *Ehret v. Uber Technologies, Inc.*, No. 3:14-CV-00113-EMC (N.D. Cal.) |
| 4  | *Ezeokoli v. Uber Technologies, Inc.*, No. RG14747166, (Cal. Super. Ct.) |
| 5  | *Goncharov v. Uber Technologies, Inc.*, No. CGC-12-526017 (Cal. Super. Ct.) |
| 6  | *Greater Houston Transportation Co., Inc. v. Uber Technologies, Inc.*, No. 4:14-0941 (S.D. Tex.) |
| 7  | *Greenwich Taxi, Inc. v. Uber Technologies, Inc.*, No. 3:14-CV-00733-AWT (D. Conn.) |
| 8  | *L and Z Transportation, Inc. v. Uber Technologies, Inc.*, No. 1:14-CV-01053-TSE-TCB (E.D. Va.) |
| 9  | *Manzo v. Uber Technologies, Inc.*, No. 1:13-CV-2407 (N.D. Ill.) |
| 10 | *McCandliss v. Uber Technologies, Inc.*, No. 1:14-CV-03275-WSD (N.D. Ga.) |
| 11 | *NV Transportation v. Uber*, No. 14-02284 (Nev. 2d Jud. Dist. Ct.) |
| 12 | *Southern Transportation, Inc. v. Lyft, Inc.*, No. 2:15-CV-02157-SHM-dkv (W.D. Tenn.) |
| 13 | *United Ind. Taxi Drivers, Inc. v. Uber Technologies, Inc.*, No. BC513879 (Cal. Super. Ct.) |
| 14 | *Whittlesea Blue Cab Co. v. Rasier LLC*, No. 2:14-CV-1993-RFB-PAL (D. Nev.) |
| 15 | *Yellow Cab Co. v. Uber Technologies, Inc.*, No. 1:14-CV-02764-RDB (D. Md.) |
| 16 | *Yellow Group LLC v. Uber Technologies Inc.*, No. 1:12-CV-07967 (N.D. Ill.) |