QUINN EMANUEL URQUHART & SULLIVAN, LLP
Robert P. Feldman (Bar No. 69602)
bobfeldman@quinnemanuel.com
Claude M. Stern (Bar No. 96737)
claudestern@quinnemanuel.com
555 Twin Dolphin Drive # 560
Redwood City, CA 94065
(650) 801-5000 Tel.
(650) 801-5100 Fax

Ethan Glass (Bar No. 216159)
ethanglass@quinnemanuel.com
Michael D. Bonanno (DC Bar. No. 998208, *admitted pro hac vice*)
mikebonanno@quinnemanuel.com
1300 I Street, NW # 900
Washington, DC 20005
(202) 538-8000 Tel.
(202) 538-8100 Fax

Attorneys for Plaintiff SC Innovations, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| SC INNOVATIONS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>UBER TECHNOLOGIES, INC., RASIER, LLC, RASIER-CA, LLC, RASIER-PA, LLC, RASIER-DC, LLC, RASIER-NY, LLC, AND UBER USA, LLC,<br><br>Defendants. | CASE NO. 3:18-cv-07440-JCS<br><br>**DECLARATION OF STEPHEN A. SWEDLOW IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY QUINN EMANUEL URQUHART & SULLIVAN, LLP**<br><br>Hearing Date: April 26, 2019<br>Time: 9:30 a.m.<br>Location: Courtroom G,<br>450 Golden Gate Avenue<br>San Francisco, CA |

# DECLARATION

I, Stephen A. Swedlow, declare and state as follows:

1. I am an attorney licensed to practice law in the State of Illinois, and I am the managing partner of the Chicago office of Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"). I have personal knowledge of the facts set forth in this declaration, including the scope of work performed by others at Quinn Emanuel for Uber Technologies, Inc. ("Uber") and if called as a witness could testify competently thereto.

2. My practice consists of litigating and trying complex civil cases for both plaintiffs and defendants. I represent parties in a number of different areas, including cases relating to patents, antitrust laws, products liability, and environmental class actions.

3. I have had no involvement in the litigation of above-captioned case (the "Sidecar matter"). Because I did prior work for Uber from 2012 to 2016, and because Uber is the adversary in the Sidecar matter, I have been subject to an ethical wall I understand Quinn Emanuel voluntarily chose to implement. The ethical wall, implemented before others at the firm began work on the Sidecar matter, has prevented me and any other attorneys who did work for Uber from having any substantive communication regarding the Sidecar matter or the firm's prior work for Uber with the Sidecar matter litigation team.

4. From 2012 to 2016, I and others at Quinn Emanuel represented Uber in several matters, most of which involved lawsuits filed against Uber by taxicab associations (so-called "taxicab cases"), where the theory was that Uber was competing unfairly with the taxicab associations because it did not need to comply, or was not complying, with municipal regulations governing taxicabs. I was the primary Quinn Emanuel partner who managed our firm's work for Uber.

5. I have reviewed Uber's publicly filed motion to disqualify our firm and the declarations Uber filed with the motion. I have also reviewed Sidecar's publicly filed complaint. I have not communicated with the litigation team, but rather have worked with our firm's internal Conflicts Counsel, who also is not involved with the Sidecar matter, to prepare this declaration.

6. Our firm's prior work for Uber was not substantially related to Sidecar claims against Uber in this case. Quinn Emanuel never was involved for Uber in any litigation that involved a competing "app" or in any antitrust claims brought by another software company.

7. To the best of my recollection, Quinn Emanuel did not provide Uber with any legal advice regarding the question whether ride-hailing software constitutes a relevant antitrust product market or how to define the antitrust markets in which Uber competed.

8. To the best of my recollection, Quinn Emanuel did not provide Uber with legal advice regarding whether the network effects associated with ride-hailing software are a meaningful barrier to entry.

9. To the best of my recollection, Quinn Emanuel did not provide Uber with legal advice regarding whether Uber's market share indicates it has market power in the market for ride-hailing software.

10. To the best of my recollection, Quinn Emanuel did not provide Uber with legal advice regarding whether Uber engaged in predatory pricing by pricing below the appropriate measure of its costs.

11. To the best of my recollection, Quinn Emanuel did not provide legal advice regarding the question whether Uber exercised market power and harmed competition in the market for ride-hailing software by raising prices starting in 2016.

12. To the best of my recollection, Quinn Emanuel did not provide legal advice regarding the question whether Uber interfered with its competitors' software (intentionally or otherwise) by submitting fraudulent ride requests.

13. To the best of my recollection, Quinn Emanuel was not exposed to confidential information concerning Uber's pricing, costs, or competitive strategies that would be material to the issues raised in the complaint in the current Sidecar matter.

14. With respect to Uber revenue data, there were certain instances during discovery in the matters we were handling in which Uber's in-house counsel would prepare data that was relevant to discovery requests served by taxicab plaintiffs, and Uber would deliver that data to Quinn Emanuel so that it could be included in discovery productions to the other side. The discovery requests typically

1  covered only the narrow geographic areas that were relevant in each taxicab case; for example, the
2  requests involved Houston, Texas in the *Greater Houston* matter.  It would be incorrect to suggest that
3  our firm received overall revenue data, or revenue data that was not intended to be produced to the
4  opposing parties.

5      15.    To the best of my recollection, Quinn Emanuel received the revenue data that Uber
6  itself identified and gathered from its internal systems.  Quinn Emanuel did not have access to or
7  insight into Uber's revenues beyond what Uber decided to provide to Quinn Emanuel which Quinn
8  Emanuel in turn produced to the plaintiff's counsel in the cases where Quinn Emanuel was counsel of
9  record.  I have no recollection that revenue data from Uber was analyzed by Quinn Emanuel in terms
10 of pricing, costs, comparison to competitors,  nor that we provided advice regarding how much Uber
11 should charge customers.  Rather, we acted as a conduit for information regarding revenue for
12 discovery responses in litigation, but we did not critically analyze the information.

13     16.    To the best of my recollection, Quinn Emanuel did not receive information from Uber
14 about the transactional costs identified in Paragraph 88 of the Sidecar Complaint.  Specifically, Quinn
15 Emanuel did not receive confidential information about any subsidy or discount provided to the
16 Passenger, the marketing costs associated with attracting the Driver and Passenger to the App to
17 complete the transaction, customer service costs, payment processing fees, or the cost of the computer
18 servers necessary to run the software and process the transaction.

19     17.    To the best of my recollection, Quinn Emanuel did not provide any legal advice or
20 strategy to Uber regarding its pricing compared to competitors.  In particular, with respect to both the
21 *Yellow Group* litigation referenced in the Yoo declaration and the *Boston Cab* matter referenced in the
22 Ghaussy declaration, Quinn Emanuel was not consulted on competitive pricing decisions; rather, we
23 were involved in discussions about how best to present the "split" of the total cost to the rider between
24 the driver and Uber.  In both cases, the allegations related to whether and to what extent Uber's
25 portion of the split was lawful or unlawful under applicable law and regulations.  To the best of my
26 recollection, Quinn Emanuel was not consulted on how much Uber charged in total for transportation
27 to riders or the competitive price for Ride-Hailing App services, or how either of those charges would
28 compare to other competitors or to Uber's own costs.  My best recollection is that we were not

exposed to how competitive pricing was determined by Uber in the context of any of the litigations, including the *Greater Houston* and *Boston Cab* 30(b)(6) preparation. Further, I did not provide counseling with respect to alleged interference with any competitor's ride-hailing apps in 2014 or at any other time during the Uber representation.

18. With respect to the disqualification motion's argument that Quinn Emanuel's work related to a "pricing" formula, this can only refer to a circumstance where the claim against Uber related to how the fee Uber collected was characterized as described immediately above. The issue in terms of pricing had nothing to do with how much was being charged in total, as described above.

19. With regard to the motion's statements regarding the California Public Utilities Commission ("CPUC") and other regulatory agencies, Quinn Emanuel never represented Uber before any regulatory agency. Quinn Emanuel was Uber's litigation counsel in several matters where CPUC issues impacted whether Plaintiffs had standing to bring a claim. In connection with the litigation matters we were handling, Quinn Emanuel analyzed certain published CPUC regulations to respond to claims made by plaintiffs in some of the California cases. I presume Uber had other counsel prepare and file Uber's submissions to the CPUC and other regulatory agencies.

20. With regard to Dr. Jesse David's expert work in the *Greater Houston* matter, neither Quinn Emanuel nor Dr. David relied upon any of Uber's confidential data to prepare Dr. David's report. The one section of the expert report that is selectively quoted in the motion refers to declining prices for taxicab permits, which from my review of the complaint does not appear relevant to the Sidecar matter. Similarly, the expert identified by Uber's declarants related to the *Boston Cab* case simply observed publicly available information and commented that the plaintiffs had failed to establish any causation. To the best of my recollection, none of these experts or Quinn Emanuel considered, relied upon or was exposed to any Uber confidential information in the context of any of these litigations related to competitive information.

21. To the best of my recollection, Quinn Emanuel did not receive confidential Uber data, documents, or analyses concerning (a) consumer substitution between Uber services and competitive services; (b) elasticity of supply or demand in any market in which Uber competes; (c) market shares for Uber or any of its competitors; or (d) Uber's profits or profit margins.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 15th day of March, 2019, in Chicago, IL.

/s/ Stephen A. Swedlow
Stephen A. Swedlow

**Signature Attestation**

I hereby attest that I have on file permission from the declarant for the signature provided as a conformed signature (/S/) within this e-filed document.

DATED: March 15, 2019        /s/ Ethan Glass
                             Ethan Glass