# McKool Smith Hennigan

Kirk D. Dillman
Direct Dial: (213) 694-1101
kdillman@mckoolsmithhennigan.com

300 South Grand Avenue
Suite 2900
Los Angeles, CA 90071

Telephone: (213) 694-1200
Telecopier: (213) 694-1234

May 7, 2021

Hon. Joseph Spero
San Francisco Courthouse, Courtroom F
450 Golden Gate Avenue
San Francisco, CA 94102

Re: SC Innovations Inc. v. Uber Technologies Inc., 3:18-cv-07440-JCS

Dear Judge Spero:

    Pursuant to the Court's Order following the Hearing on April 30, 2021, Plaintiff SC Innovations Inc. ("SCI") submits the attached two-page letter brief with authority demonstrating that an antitrust plaintiff can recover damages outside of the relevant market if the defendants' anti-competitive conduct in the relevant market forced the plaintiff out of business entirely, including businesses outside the relevant market.

                                      Respectfully submitted,

                                 By   /s/ *Kirk D. Dillman*
                                      Lewis T. LeClair
                                      Kirk D. Dillman
                                      John C. Briody
                                      MCKOOL SMITH, P.C.

    *Attorneys for Plaintiff SC Innovations, Inc.*

The Clayton Act provides that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . . and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 15(a). The only constraint on a plaintiff's ability to recover damages is that they be sustained "by reason of" defendant's conduct that violates the antitrust laws. Otherwise stated, "[i]t is enough that the illegality is shown to be a material cause of the injury; a plaintiff need not exhaust all possible alternative sources of injury." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 114 n.9 (1969); *see also William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1051 (9th Cir. 1981) (citing same). There is no rule confining antitrust damages to the relevant market where the anticompetitive conduct occurred. The ABA Model Jury Instructions—which are widely used by federal courts, including in this District[1]—make this clear:

> The law provides that plaintiff should be fairly compensated for ***all damages to its business or property*** that were a direct result or likely consequence of the conduct that you have found to be unlawful. Antitrust damages are only compensatory, meaning their purpose is to put an injured plaintiff as near as possible in the position which it would have been had the antitrust violation not occurred.

ABA Model Jury Instructions in Civil Antitrust Cases ("Instructions"), Ch. 6.B.1. (2016 ed.) (citing authorities, including *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 565-66 (1981) (emphasis added)). There is a specific instruction addressing, where appropriate, a plaintiff's recovery of a business's lost going concern value:

> If plaintiff was forced to sell, shut down, or otherwise terminate its business because of defendant's alleged antitrust violation, plaintiff is entitled to damages for any resulting loss to its business's going concern value.

*Id.* at Ch. 6.B.10.

Nothing in the Clayton Act, the Instructions, or any other legal authority narrowly confines an antitrust plaintiff to damages in only the market where the challenged conduct took place. This is no mistake or oversight. It is well settled that, once an antitrust violation has been established, the burden of proof for antitrust damages is relaxed, and a defendant may be held liable for all of the losses traceable to its anticompetitive conduct. *See, e.g.*, *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1221 (9th Cir. 1997) ("In the context of antitrust violations [the damages] standard is relaxed once liability is shown because market uncertainties often preclude a precise showing of 'where' the plaintiff would have been absent the proven antitrust violation."); *In re Data Corp.*, 490 F. Supp. 1089, 1118 (N.D. Cal. 1980) (citing *Zenith Radio Corp.* and holding that defendant's explanations for plaintiff's losses might "minimiz[e] the amount of damages," but were "insufficient to create a genuine dispute with respect to the fact of plaintiffs' damages," because defendant's conduct does not need to be the "sole, or principal cause" of plaintiff's injury).

---

[1] *See, e.g.*, *City of Long Beach v. Standard Oil Co.*, 46 F.3d 929, 933 (9th Cir. 1995) (citing with approval the 1990 version of the ABA Sample Jury Instructions in Civil Antitrust Cases); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-MD-01819, 2010 WL 10086747, at *1 (N.D. Cal. Dec. 16, 2010) ("The American Bar Association model jury instructions for civil antitrust cases should be used where an appropriate model instruction from the Ninth Circuit is unavailable."); *see also* Ninth Circuit Manual of Model Civil Jury Instructions at 14. Antitrust, available at https://www.ce9.uscourts.gov/jury-instructions/node/226 (directing the reader to the ABA Model Instructions in Civil Antitrust Cases).

Page 2

Courts specifically addressing the issue have uniformly held that an antitrust plaintiff's damages are not limited to the relevant market. Instead, a plaintiff can seek "damages for lost profits . . . outside of the geographic and product markets [that are recognized] for liability purposes." *Bonjorno v. Kaiser Aluminum & Chem. Corp.*, 752 F.2d 802, 814 (3d Cir. 1984); *see also Perkins v. Standard Oil Co.*, 395 U.S. 642, 649-50 (1969) (after proving injury, plaintiff was "entitled to present evidence of all of his losses to the jury," including consequential damages); *Greene v. Gen. Foods Corp.*, 517 F.2d 635, 663-64 (5th Cir. 1975) (allowing damages outside of the alleged antitrust market because relevant products were "a 'major door opener' that helped [plaintiff] establish and maintain business relationships with consumers . . . and permitted him to sell other kinds of . . . products"); *Lafayette Steel Co. v. Na't Steel Corp.*, 87 F.R.D. 612, 613-14 (E.D. Mich. 1980) (damages in steel supply market were recoverable despite fact that antitrust injury occurred in separate market for automobile blanks).

There is no matter of law prohibition on recovering damages for losses outside the antitrust market where the alleged misconduct took place. In order to recover damages, a plaintiff must first demonstrate injury or harm to competition in the relevant market of concern where the specifically challenged anticompetitive conduct took place (here, the ride-hailing app market), but once that injury is established, the law is clear that damages are not narrowly confined.

Uber's contention to the contrary incorrectly conflates the distinct concepts of injury and damages in a way that: (i) is at odds with the plain text of the Clayton Act, and (ii) not supported by any law, anywhere. During the April 30 conference, Uber referenced, for example, *J. Truett Payne v. Chrysler Motors Corp.* and *FTC v. Qualcomm* as supporting its proposed damages limitation, but neither case does so. In *J. Truett Payne*, the Supreme Court explained that, to recover antitrust damages, "a plaintiff must make some showing of actual injury attributable to something the antitrust laws were designed to prevent." 451 U.S. at 562. The Supreme Court recognized a "fundamental" flaw that the "court below bypassed the issue of liability and went directly to the issue of damages." *Id.* at 568. In *Qualcomm*, the Ninth Circuit reiterated the unremarkable proposition that "in assessing alleged antitrust injuries, courts must focus on anticompetitive effects in the market where competition is allegedly being restrained." 969 F.3d 974, 992 (9th Cir. 2020) (citation and quotation marks omitted). Neither case contains any language (much less holding) that limits or abrogates the scope of damages available under the Clayton Act for a proven antitrust violation. They simply address the prima facie proof that a plaintiff must marshal to prove the substance of its antitrust claim, *before* a plaintiff can get to the issue of damages.

"[O]nce proof of injury causation has been established"—the issue before the courts in *J. Truett Payne* and *Qualcomm*—"courts have allowed antitrust plaintiffs considerable latitude in proving the amount of damages"—the issue before the Court here. *U.S. Football League v. Nat'l Football League*, 842 F.2d 1335, 1378 (2d Cir. 1988); *see also Bonjorno*, 752 F.2d at 813 (Defendant "has confused the questions of causation and calculation of damages. Causation is an element of liability . . . . Once a jury has properly found causation . . . the damages in this case may be determined without strict proof of what act caused which injury."). Here, there is no dispute that SCI asserts harm in the alleged market of concern, and any disputes over the scope of the losses that were caused by Uber's conduct presents a fact issue for the jury to decide. *See William Inglis & Sons*, 668 F.2d at 1051. SCI—like any other antitrust plaintiff—is entitled to recover for "all damages" resulting from Uber's unlawful conduct.